**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Bolton ARRINGTON,
Defendant-Appellant.**

No. 79–5327.

United States Court of Appeals,
Fifth Circuit.

June 12, 1980.

---

Allen F. Cazier, San Antonio, Tex. (Court-Appointed), for defendant-appellant.

Jamie C. Boyd, U. S. Atty., LeRoy Morgan Jahn, Asst. U. S. Atty., Wayne F. Speck, Daniel Maeso, Trial Attys., San Antonio, Tex., for plaintiff-appellee.

Before WISDOM, FAY and TATE, Circuit Judges.

FAY, Circuit Judge:

On March 21, 1979, a federal jury in the Western District of Texas convicted appellant John Arrington of eight counts of unlawful possession of firearms. Comprising six counts of his conviction were violations of 18 U.S.C. App. § 1202(a)(1) (1976),[1] which proscribes possession of firearms by a convicted felon. Notwithstanding the incontrovertibility of his prior felony conviction, Arrington claims that at the time of his arrest he no longer bore the onus of that conviction and consequently should not have been charged. He reasons that his prior conviction was automatically expunged upon completion of the sentence given him under the Youth Corrections Act, 18 U.S.C. §§ 5005–5026 (1976).[2] We find that Arrington's rationale comports with

---

1. 18 U.S.C. App. § 1202(a)(1) (1976) provides: Any person who has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . . and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

2. Pertinent parts of the Federal Youth Corrections Act, 18 U.S.C. §§ 5005–5026 (1976), provide as follows:
   § 5010. Sentence
   (b) If the court shall find that a convicted person is a youth offender, and the offense is · punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Commission as provided in section 5017(c) of this chapter; or
   § 5017. Release of youth offenders
   (c) A youth offender committed under section 5010(b) of this chapter shall be released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction.
   § 5021. Certificate setting aside conviction
   (a) Upon the unconditional discharge by the Commission of a committed youth offender before the expiration of the maximum sentence imposed upon him, the conviction shall be automatically set aside and the Commission shall issue to the youth offender a certificate to that effect.

the policy and purposes of the Youth Corrections Act, and therefore reverse his conviction of those six counts framed under 18 U.S.C. App. § 1202(a)(1) (1976).

Arrington also challenges on several grounds the remaining two counts, which involved unlawful possession of a sawed-off shotgun in violation of 26 U.S.C. § 5861(d), (i) (1976).[3] First, Arrington challenges the trial court's refusal to mandate disclosure of the identity and whereabouts of the government informant whose confidential tip established probable cause for an incriminating search of Arrington's house. Second, he suggests that charging both possession of an unregistered firearm and also possession of a firearm without a serial number was multiplicitous, since a firearm without a serial number cannot be registered. Third, Arrington claims that punishing him for possessing a firearm without a serial number was contrary to statutory purpose, when obtaining a serial number was impossible. Finally, Arrington claims that the trial court erred in admitting into evidence the utility bills found in the search of Arrington's house, which were later offered to prove Arrington's residence in the house at the time of the search. Finding no reversible error in any of these claims, we affirm Arrington's conviction on the two counts under 26 U.S.C. § 5861(d), (i) (1976).

### FACTS

On April 19, 1971, Arrington pled guilty to a federal charge of failing to pay a transfer tax on marijuana, in violation of Law of August 16, 1954, ch. 736, 68A Stat. 562 (repealed 1970); Law of July 18, 1956, ch. 629, Title I, § 101, 70 Stat. 567 (repealed 1970).[4] Government's Exhibit 9. He received an indeterminate sentence under 18 U.S.C. § 5010(b) (1976), served some prison time at Seagoville, Texas, and gained parole early in 1975. Record, vol. III at 127. Arrington completed his sentence in April, 1977, without any interruption of his status as a youthful offender. *Id.*

On December 19, 1978, police procured a warrant to search Arrington's house in San Antonio, Texas, based on an informant's confidential tip that he had seen Arrington there with amphetamines on the previous day. The officers executed the warrant on December 20, 1978, arresting Arrington and seizing six registered rifles and pistols and an unregistered sawed-off shotgun bearing no serial number. Arrington subsequently admitted ownership of the registered firearms but denied any knowledge of the shotgun, which had been discovered in a bedroom of the house. Besides the firearms, the officers also collected several water and utility bills addressed to Arrington at that residence.

### Federal Youth Corrections Act

Arrington now appeals his conviction of the six counts framed under 18 U.S.C. App. § 1202(a)(1) (1976). He con-

---

**3.** 26 U.S.C. § 5861(d), (i) (1976) provides as follows:

It shall be unlawful for any person—(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; or

\* \* \* \* \* \*

(i) to receive or possess a firearm which is not identified by a serial number as required by this chapter . . . .

**4.** The effective date of the repeal of former 26 U.S.C. § 4744 was "the first day of the seventh calendar month that begins after Oct. 26, 1970 . . . .," or May 1, 1971. Pub.L. 91–513, title III, § 1101(b)(3)(A), Oct. 27, 1970, 84 Stat. 1292. Arrington's first conviction fell on April 19, 1971. Government's Exhibit 9. Significantly, Arrington launches no collateral attack on the validity of his prior conviction. The recent case of *Lewis v. United States*, —— U.S. ——, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), would likely bar such a collateral attack. Nonetheless notable is the questionable constitutional validity of the marijuana transfer tax statute after *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and up until the effective date of the repealer. This court noted in *Frey v. United States*, 558 F.2d 270, 273 n. 5 (5th Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1487, 55 L.Ed.2d 517 (1978), that "*Leary* did not hold the Marijuana Tax Act unconstitutional. Rather, it held that a timely and proper assertion of the Fifth Amendment privilege against self-incrimination should have provided *Leary* a complete defense to prosecution under the statute making it unlawful to acquire, transport or conceal untaxed marijuana, 26 U.S.C. § 4744 . . . ."

tends that merely completing the sentence given him under the Federal Youth Corrections Act lifted all the disabilities of felony conviction, including the bar to firearm possession. The government disputes his contention, claiming that without an 18 U.S.C. § 5021(a) certificate setting aside his conviction, Arrington still labored under those disabilities.[5] Thus, the dispute centers around what event lifts the disadvantages of a criminal record from a youthful offender who has completed the maximum sentence of the Youth Corrections Act section under which he was sentenced. Pertinent here as a practical facet of that issue is what evidentiary burden the government must shoulder to prove that a youthful offender is subject to a convicted felon's disabilities.

■ Clearly, a prior unexpunged felony conviction is an integral element of the crime of which Arrington stands convicted. 18 U.S.C. App. § 1202(a)(1) (1976). *See United States v. Barfield,* 527 F.2d 858, 861 (5th Cir. 1976); *United States v. Marzett,* 526 F.2d 277, 278 (5th Cir. 1976). Accordingly, the government had to prove beyond a reasonable doubt the fact of Arrington's prior conviction. *See In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970).

Citing *Lewis v. United States,* —— U.S. ——, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), government counsel contends on appeal that producing a certified copy of the judgment against Arrington carried the government's burden of proving him a convicted felon. Arrington's affirmative responsibility, counsel asserts, is to rebut that evidence with concrete proof of his sentence, treat-

ment, and unconditional discharge under the Youth Corrections Act. Government counsel further contends that a youthful offender asserting his unconditional discharge and his conviction's expunction must show proof by a certificate issued pursuant to 18 U.S.C. § 5021(a) (1976). Conversely, Arrington argues that his unconditional discharge and his conviction's expunction were automatic upon completion of the maximum sentence of the section under which he was sentenced, 18 U.S.C. § 5010(b) (1976).

Because of the Youth Corrections Act's unique import, the government's citations are inapposite and its position erroneous. In the present case, as with other youth offender convictions, the very judgment and commitment order presented by the government to establish Arrington's initial conviction also revealed that he was sentenced under section 5010(b) of the Youth Corrections Act. Government's Exhibit 9. The only resolution of a section 5010(b) sentence provided by the Act is unconditional discharge pursuant to section 5017(c). Under that section, unconditional discharge may come early to deserving young offenders, but in any case is mandatory after six years. 18 U.S.C. § 5017(c) (1976).[6]

■ Having a broad range of sentencing options available, the trial court in Arrington's case would have taken into account the mandatory discharge provision before choosing the appropriate sentence. As a matter of discretion, the judge could have sentenced Arrington to probation under 18 U.S.C. § 5010(a) (1976). Alternatively, he could have sentenced him under section 5010(c) to treatment for longer than six

---

5. The government urges that the concurrent sentence doctrine would excuse our consideration of the conviction expunction claim if the other counts of Arrington's conviction are affirmed, since ten-year and eight-year sentences were imposed to run concurrently with the shorter two-year sentences given for each of the other six counts. We disagree. Setting aside six different felony counts presumably would greatly affect Arrington's opportunity to gain earlier parole. *See United States v. Rubin,* 591 F.2d 278, 281 (5th Cir.), *cert. denied,* —— U.S. ——, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979).

6. Of course, the period before unconditional discharge must be spent in the Attorney General's custody. Courts have logically inferred that escape tolls the running of the maximum term under the applicable section. *See, e. g., Suggs v. Daggett,* 522 F.2d 396, 397 (10th Cir. 1975); *Hartwell v. Jackson,* 403 F.Supp. 1229, 1230 (D.D.C.1975), *aff'd,* 546 F.2d 1042 (D.C. Cir.1976).

years, up to the maximum adult offender sentence for the offense charged. Finally, the trial court could have chosen not to sentence Arrington under the Youth Corrections Act, but rather as an adult offender. 18 U.S.C. § 5010(d) (1976).[7] The trial judge considered all these options and chose to sentence under section 5010(b), which has a maximum sentence of six years. Accordingly, the government cannot second-guess the trial court now, trying to lengthen Arrington's sentence because no section 5021(a) certificate had issued. Expunction of Arrington's conviction was clearly automatic upon his unconditional discharge at the end of six years. See Minshew v. United States, 410 F.2d 396, 397 (5th Cir. 1969).

Having indisputably completed the maximum term of a section 5010(b) sentence, Arrington had reached unconditional discharge before he was charged with violating 18 U.S.C. App. § 1202(a)(1) (1976). The statutory language of the Youth Corrections Act, automatically setting aside his conviction, mandates reversal of the six counts of his conviction under 18 U.S.C. App. § 1202(a)(1) (1976). Accord, United States v. Purgason, 565 F.2d 1279, 1280 (4th Cir. 1977); United States v. Fryer, 545 F.2d 11 (6th Cir. 1976). See also United States v. Vice, 562 F.2d 1004 (5th Cir. 1977), cert. denied, 435 U.S. 951, 98 S.Ct. 1578, 55 L.Ed.2d 801 (1978) (citing Fryer with implicit approval).

■■■ Not only does the clear statutory language command this result, but so also does the policy underlying the Youth Corrections Act. Government counsel correctly cites the general rule that only by permission in accord with statutory scheme can any person who has been convicted of a felony possess a firearm. 18 U.S.C. App. § 1203 (1976); Lewis v. United States, —— U.S. ——, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). The Youth Corrections Act, however, actually operates to remove certain youthful offenders from the realm of those persons who have been convicted of a felony. The Act's import is to remove the taint of youthful indiscretions, giving a youthful offender a second chance to live free of the lifelong ignominy of a criminal record. Dorszynski v. United States, 418 U.S. 424, 432–35, 94 S.Ct. 3042, 3047–3048, 41 L.Ed.2d 855 (1974); United States v. Doe, 556 F.2d 391, 392 (6th Cir. 1977); United States v. McMains, 540 F.2d 387, 388 (8th Cir. 1976); Mestre Morera v. United States Immigration and Naturalization Service, 462 F.2d 1030, 1032 (1st Cir. 1972); H.R.Rep. No. 2979, 81st Cong., 2d Sess. (1950). If a youthful offender has been unconditionally discharged, the disabilities of a criminal conviction are completely and automatically removed; indeed, the conviction is set aside as if it had never been.[8] 18 U.S.C. § 5021 (1976); Dorsyznski v. United States, 418 U.S. at 434–35, 94 S.Ct. at 3048; Minshew v. United States, 410 F.2d at 397. See also United States v. Vice, 562 F.2d at 1005; Tatum v. United States, 310 F.2d 854, 856 (D.C.Cir.1962). Issuing the section 5021(a) certificate to a youthful offender who has completed his sentence is a ministerial act which merely certifies what has already been accomplished.

Therefore, to require Arrington to rebut evidence of his conviction by producing a

---

7. A judge who sentences a youthful offender under 18 U.S.C. § 5010(d) (1976) must make an explicit finding that the offender would not benefit from treatment under section 5010(b) or section 5010(c). Although in some instances the adult sentence is actually shorter than the maximum terms of Youth Corrections Act sentencing options, it does not carry with it the advantage of conviction expunction. That advantage of Youth Corrections Act permits a longer sentence for rehabilitative treatment without violation of due process precepts. Guidry v. United States, 433 F.2d 968 (5th Cir. 1970); Abernathy v. United States, 418 F.2d 288 (5th Cir. 1969).

8. We do not need to decide now if 18 U.S.C. § 5021(a) (1976) also serves to expunge even the record of Arrington's previous conviction. For the purposes of this appeal, defining expunction to include at least setting aside his conviction is a satisfactory resolution. See generally United States v. Purgason, 565 F.2d 1279, 1280 (4th Cir. 1977); United States v. Doe, 556 F.2d 391, 393 (6th Cir. 1977); United States v. McMains, 540 F.2d 387 (8th Cir. 1976).

certificate whose issuance is pro forma and controlled by the federal government, his accuser, would elevate form over substance to an unconstitutional degree. Indeed, placing on Arrington the burden of proving his conviction's expunction would be analogous to placing upon a person never before convicted the burden of proving his clear record. To allocate the evidentiary burden in such a way obviously would be wrong, since the task of proving the previous conviction element of 18 U.S.C. App. § 1202(a)(1) (1976) is always the government's. Because the government failed in this case to prove that element, we reverse Arrington's conviction of the six counts of unlawful firearm possession in violation of 18 U.S.C. App. § 1202(a)(1) (1976).

### The Confidential Informant

Arrington next maintains that reversible error occurred when the trial court refused to order disclosure of the identity and whereabouts of the confidential informant whose tip authorized the search of Arrington's house. Disclosure, Arrington contends, would have facilitated his attack on the probable cause police offered to obtain the search warrant. According to the affidavit supporting the warrant, the informant claimed to have seen Arrington with methamphetamines at Arrington's house on December 18, 1978. Prior to trial, Arrington requested disclosure of the informant's identity, and filed a motion to suppress evidence for lack of probable cause to issue the search warrant. With his motion he filed affidavits flatly contradicting the informant's affidavit. Before trial, the court held a motion hearing, allowing both sides to bolster the affidavits with testimony. Police officers testified at the motion hearing that they had driven by Arrington's house on the day of the tip and had seen him there. Arrington's witnesses, however, swore that he had been out of town with them on the day he supposedly was seen at home. After the hearing, the court questioned *in camera* the officer to whom the informant had reported. The trial court then denied the motion to suppress and refused to order disclosure of the informant's identity or whereabouts.

Clearly, even proof that the informant's information was false would not have vitiated probable cause for the warrant. According to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), a successful attack by Arrington on the asserted probable cause would have had to show that the affiant police officers repeated the informant's tip with knowledge that it was false or with reckless disregard for the truth. Nothing in the record casts any doubt on the veracity or reliability of the attesting officers. Arrington nonetheless claims that contradicting the informant's statements drew the informant's credibility into issue. By generous inference, we can consider his claim an attack on the reliability of the officers who used the informant's tip to obtain a warrant. Accordingly, we consider whether Arrington should have had greater opportunity to question the informant to establish lack of probable cause to issue the warrant.

The seminal case governing disclosure of informant's identities, *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), requires disclosure if the informant's identity would be "relevant and helpful to the defense of an accused . . ." *Id.* at 61, 77 S.Ct. at 628. In balancing the public interest in protecting the flow of information against the defendant's interest in preparing his defense, the trial court must consider "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62, 77 S.Ct. at 629.

This court developed the balancing analysis even further in *Suarez v. United States*, 582 F.2d 1007 (5th Cir. 1976). That case mandates disclosure if the informant's role was crucial to the defendant's criminal conduct, excuses disclosure if the informant's role was merely that of a tipster, and, finally, leaves to the trial court in all the intermediate cases the task of balancing public interests against the defendant's.

Nothing in the record suggests that the informant in the present case played even a

peripheral role in Arrington's criminal conduct. He reported having seen a narcotics violation; Arrington was convicted of illegal firearm possession. The informant's remarks merely led to a search which uncovered apparently unexpected illicit bounty. As a mere tipster, he could have offered little information "relevant and helpful" to Arrington. Accordingly, the trial court properly refused to order disclosure of his identity and location. *Compare United States v. Gonzales,* 606 F.2d 70 (5th Cir. 1979) *and United States v. Alonzo,* 571 F.2d 1384 (5th Cir.), *cert. denied,* 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978) *and United States v. Mendoza,* 433 F.2d 891 (5th Cir. 1970), *cert. denied,* 401 U.S. 943, 91 S.Ct. 953, 28 L.Ed.2d 225 (1971) *with United States v. Silva,* 580 F.2d 144 (5th Cir. 1978) *and Gilmore v. United States,* 256 F.2d 565 (5th Cir. 1958).

Even should the informant's role be deemed more integral to Arrington's crimes, however, the district court need not have ordered disclosure. None of the factors listed in *Roviaro* called for disclosure. *See Roviaro v. United States,* 353 U.S. at 62, 77 S.Ct. at 628. The informant's tip did not relate to the crime charged. Moreover, Arrington does not even relate what defenses he would have pursued given opportunity to question the informant. Accordingly, he certainly cannot reveal how the informant's testimony would have aided him in presenting those defenses. Such ethereal interests count little when balanced against the governmental interest in protecting its informant's welfare. They cannot command reversal.

### Multiplicitous Charge

◼ Appellant Arrington next challenges his convictions under 26 U.S.C. § 5861(d), (i). He suggests that charging both possession of an unregistered firearm and also possession of a firearm without a serial number was multiplicitous, since a firearm without a serial number cannot be registered.

Arrington's assertion is erroneous. Each subsection required proof of facts that the other did not, and therefore constituted an offense different from the other. *See Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Moreover, this court has on several occasions approved concurrent sentences for separate convictions under these two provisions. *Rollins v. United States,* 543 F.2d 574 (5th Cir. 1976); *United States v. Gamboa,* 543 F.2d 545 (5th Cir. 1976). *See also United States v. McDaniel,* 550 F.2d 214, 219 (5th Cir. 1977).

### Statutory Purpose

◼ Arrington next claims that punishing him for possessing a firearm without a serial number was contrary to statutory purpose, when obtaining a serial number was impossible due to the nature of the firearm. His counsel therefore maintains that a "legal impossibility" prevented Arrington's compliance with 26 U.S.C. § 5861(i) (1976). The assertion is patently erroneous. One of the statutory purposes behind requiring identification of firearms by serial number is to prevent possession of firearms such as the sawed-off shotgun found in Arrington's house. *See United States v. Ranney,* 524 F.2d 830, 832 (7th Cir. 1975), *cert. denied,* 424 U.S. 922, 96 S.Ct. 1130, 47 L.Ed.2d 330 (1976); *United States v. Peterson,* 475 F.2d 806, 810 (9th Cir.), *cert. denied,* 414 U.S. 846, 94 S.Ct. 111, 38 L.Ed.2d 93 (1973).

### Admissibility of Utility Bills

◼ Finally, Arrington complains that utility bills garnered in the search of his home were inadmissible to prove his residence at the house searched. In claiming that the bills were hearsay, he errs. The bills were not proffered to prove the truth of their contents and accordingly were admissible. *See United States v. Gonzales,* 606 F.2d 70, 77 (5th Cir. 1979); Fed.R.Evid. 801(c).

### Conclusion

Arrington was not a convicted felon at the time of his arrest for possessing firearms in violation of 18 U.S.C. App.

§ 1202(a)(1) (1976). Accordingly, his convictions on counts one through six are REVERSED. The remaining assertions of error having no merit, his convictions on counts seven and eight under 26 U.S.C. § 5861(d), (i) are AFFIRMED.