UNITED STATES of America, Appellee,

v.

Anthony DiPASQUALE, Appellant.

No. 81–2149.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
April 12, 1982.

Decided May 5, 1982.

Peter F. Vaira, Jr., U. S. Atty., Philadelphia, Pa., Robert J. Erickson, Atty., U. S. Dept. of Justice, Washington, D. C., Molly H. Colburn, Sp. Atty., U. S. Dept. of Justice, Philadelphia, Pa., for appellee.

Stephen H. Serota, Philadelphia, Pa., for appellant.

* Honorable Walter K. Stapleton, United States District Judge for the District of Delaware, sitting by designation.

1. *See Sapir v. United States*, 348 U.S. 373, 75 S.Ct. 422, 99 L.Ed. 426 (1955). The Double Jeopardy Clause bars reprosecution of these charges. *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981); *Burks v. United States*, 437 U.S. 1, 11, 17–18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978).

Before SEITZ, Chief Judge, ADAMS, Circuit Judge, and STAPLETON, District Judge.*

## OPINION OF THE COURT

STAPLETON, District Judge.

Anthony DiPasquale filed this appeal following his conviction under 18 U.S.C.App. § 1202(a), the federal statute which makes it a crime for a convicted felon to possess a firearm. To satisfy its burden of proving a predicate felony conviction beyond a reasonable doubt, the government tendered, and the trial court admitted into evidence, the testimony of a state prosecutor and portions of a state trial record. Because we find this evidence insufficient to prove an essential element of the offense charged as a matter of law, we reverse the conviction and remand the case to the district court with instructions to dismiss the indictment.[1]

### I

On February 11, 1981, members of the Philadelphia Police Department and agents of the Federal Bureau of Investigation entered Anthony DiPasquale's home pursuant to a search warrant.[2] Their search revealed a shoe box which contained personal papers belonging to DiPasquale and his wife, and a .22 caliber revolver. On April 20, 1981, a federal grand jury returned a single count indictment charging DiPasquale with unlawful possession of a firearm.

Title VII of the Omnibus Crime Control and Safe Streets Act of 1968[3] declares unlawful the possession, receipt, or transportation of a firearm in or affecting commerce by "[a]ny person who—(1) has been convicted by a court of the United

2. Although Appellant raises his trial counsel's failure to file a timely suppression motion as an instance of ineffective assistance, he does not contest the validity of the search or of the warrant on appeal.

3. Pub.L.No.90–351, 82 Stat. 197 (1968).

States or of a State or any political subdivision thereof of a felony." 18 U.S.C.App. § 1202(a)(1). Subsection (c)(2) of Section 1202 defines "felony" to include "any offense punishable by imprisonment for a term exceeding one year, but does not include any offense (other than one involving a firearm or explosive) classified as a misdemeanor under the laws of a State and punishable by a term of imprisonment of two years or less." To convict under Section 1202, the government must prove a predicate felony conviction beyond a reasonable doubt. *United States v. Arrington*, 618 F.2d 1119, 1123 (5th Cir. 1980), *cert. denied*, 449 U.S. 1086, 101 S.Ct. 876, 66 L.Ed.2d 812 (1981); *United States v. Barfield*, 527 F.2d 858, 861 (5th Cir. 1976); *United States v. Cable*, 446 F.2d 1007 (8th Cir. 1971).

In this case, the government relied upon Appellant's conviction in the Court of Common Pleas of Bucks County, Pennsylvania, on charges of simple assault, conspiracy to commit simple assault, theft, and conspiracy to commit theft. The state court jury, at the same time that it found DiPasquale guilty of these offenses, also found him not guilty of several others charged in the same information: robbery, conspiracy to commit robbery, aggravated assault, and conspiracy to commit aggravated assault.[4]

Under Pennsylvania law, simple assault is a second or third degree misdemeanor, 18 Pa.C.S.A. § 2701(b), punishable by a maximum of two years imprisonment. 18 Pa.C.S.A. § 106(b)(7), (8).[5] Theft offenses range in severity from a third degree felony to a third degree misdemeanor, depending upon the circumstances of the theft and the amount of money or property taken.[6] The second and third degree misdemeanor thefts, which involve the taking of property having a value of less than $200, carry maximum terms of two years and one year, respectively.

The state docket sheet which records the judgment of conviction does not specify the severity of the theft of which DiPasquale was convicted. Nor is it possible to infer the grade of theft from the sentence imposed. The state court sentenced DiPasquale to a term of imprisonment of from six months to one year, within the maximum allowed for a misdemeanor of the third degree as well as more serious theft offenses. *See* 18 Pa.C.S.A. § 106(b)(8).

Because the judgment of the state court alone could not establish a predicate felony within the meaning of Section 1202(c), the government resorted to a more circuitous means to prove this element. Although the docket sheet did not so state, the government argued that the state jury must have found DiPasquale guilty "as charged", that is, guilty of taking "account books, 3 × 5 cards, checkbook, 1½ carat ... diamond men's ring, gold band, and $8000 in curren-

4. The Court of Common Pleas records its judgments as docket entries. The entire entry for February 15, 1979 follows:

The defendant is found NOT GUILTY as to Robbery, Conspiracy to commit Robbery, Aggravated Assault, Conspiracy to Commit Aggravated Assault. Found GUILTY as to Theft, Conspiracy to commit Theft, Simple Assault, Conspiracy to commit Simple Assault. Bail—Surety $5,000.00 or $500.00 cash bail.
(Exhibit G–10).

5. Unless mitigating factors warrant outright dismissal of the charges, a criminal conspiracy is of "the same grade and degree as the most serious offense which is attempted or solicited or is an object of the conspiracy." 18 Pa.C.S.A. § 905.

6. 18 Pa.C.S.A. § 3903 provides, in relevant part:

(a) *Felony of the third degree.* Theft constitutes a felony of the third degree if the amount involved exceeds $2,000, or if the property stolen is a firearm, automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle, or in the case of theft by receiving stolen property, if the receiver is in the business of buying or selling stolen property.
(b) *Other grades.* Theft not within subsection (a) of this section, constitutes a misdemeanor of the first degree, except that if the property was not taken from the person or by threat, or in breach of fiduciary obligation, and:
(1) the amount involved was fifty dollars ($50) or more but less than two hundred dollars ($200) the offense constitutes a misdemeanor of the second degree; or
(2) the amount involved was less than fifty dollars ($50) the offense constitutes a misdemeanor of the third degree.

**358**

cy." [7] On this basis, the government argued that the state jury had found DiPasquale guilty of the theft of property worth more than $2000, which is a felony of the third degree. After reviewing the record, the district court rejected this theory. Because the state court's instructions were disjunctive, the guilty verdict did not establish a conviction for taking property of any particular value. Rather, as the district judge appropriately observed:

> In the absence of [other evidence] we can only speculate whether it was one or all of those things which the defendant was found guilty of having taken, not to mention whether the value would be a value agreed on by the jury.

(N.T. 203; *see also* N.T. at 240). Stymied, the government adopted another approach.

The government offered to show that the state conviction must have been for a first degree misdemeanor theft, punishable by up to five years imprisonment, 18 Pa.C.S.A. § 106(b)(6), because it involved a "taking from a person" and because it involved threats. To carry its burden of proof, the government submitted the state court docket entries (Exhibit G–10), the state information (G–11), and designated portions of the state trial transcript (G–12). It presented this evidence through the testimony of Joseph Frontino, the Assistant District Attorney who prosecuted the Bucks County case.[8] Frontino read the designated transcript pages aloud. The jury heard the testimony of Jack Toy, the victim of the Bucks County theft, that four men entered his business office on the evening of the alleged state crimes, that DiPasquale was among them, and that a diamond ring valued at $3,000 had been taken from his finger during the ensuing events. (N.T. 266–67). Frontino also read DiPasquale's admission that, at one point, he had thrown a staple gun at Toy. (N.T. 268–272).

During cross examination, Frontino gave the following testimony:

Q. Now, sir, you read a portion of the testimony with respect to Mr. Toy having the ring stolen from him by individuals in the bathroom of his shop there at Gulf Lighting, right?

A. Yes.

Q. Isn't it a fact, sir, that Mr. Toy testified at that trial that he recalled with certainty that this defendant, Mr. DiPasquale, did not take the ring and it was other individuals who did?

A. Yes. I think, as I indicated when I read the testimony, it was the big guy.

Q. Okay. Big guy is not Mr. DiPasquale, right?

A. That is correct.

\* \* \* \* \* \*

Q. . . . Would you care to show me in the notes of testimony where such a threat is referred?

A. Oh, with regard to the testimony at the trial?

Q. Yes.

A. Oh, no.

Q. No, you wouldn't care to?

A. No, I couldn't say that anyone had testified at the trial that they were threatened by Mr. DiPasquale.

\* \* \* \* \* \*

Q. Now, sir, you were present during the entire trial. Did the proof at trial involve a showing that certain items had been taken from an individual?
A. Yes, the evidence did show that at trial.
Q. And did the proof at trial involve a showing that threats were involved?
A. Yes, the evidence also showed that.
(N.T. 249).

---

**7.** Paragraph 3 of the state information charged that the defendant:

> unlawfully [took] movable property, to wit, account books, 3 × 5 cards, checkbook, 1½ carat tear drop diamond men's ring, gold band, and $8,000 in currency, total value unknown, of one GULF LIGHTING COMPANY within intent to deprive them thereof.

(Supp.App. 2).

**8.** During the direct examination the government posed the following questions to Mr. Frontino:

Q. Isn't it a fact that Mr. Toy expressly indicated that this defendant never took the ring or any other item off the person of Mr. Toy?

A. That is correct. I had said that before, yes.

(N.T. 280–83).

At the close of the case, the District Court judge instructed the jury that:

you may find that the defendant was convicted of a felony for purposes of federal law if you find that the theft and conspiracy of which he was convicted in Bucks County involved a taking of the objects "from the person" or that the theft in this case was accompanied by threats.

(N.T. 467).

The jury returned a guilty verdict on May 29, 1981.

## II

■ We assume, without deciding, that extrinsic evidence is admissible to prove that an ambiguous state court judgment constitutes a predicate felony conviction. Resolution of that issue is unnecessary in this case because the evidence which the government was permitted to introduce was clearly insufficient to sustain its burden of proving a predicate felony conviction beyond a reasonable doubt. No rational finder of fact could interpret the evidence placed before the federal jury as precluding the reasonable hypothesis that the state jury found DiPasquale guilty of a second or third degree misdemeanor.[9] Just as the jury may have believed that DiPasquale took property worth less than $200, without also believing that he participated in the theft of money or a diamond ring, it may also have found that he took records from Toy's office, without also believing that he took something from Toy's person. Nor was it necessary for the jury to have found that DiPasquale made any threats in order for it to have reached its verdict.

The federal jury's task was not to reexamine the evidence and to resolve disputed issues of fact presented in the state trial record, but rather to determine whether there was or was not a reasonable doubt about whether the state jury found that the theft involved a taking from a person or threats. The evidence before the federal jury was compatible with either answer to this question and it could only speculate as to what was in the state jury's mind.

We hold that no reasonable jury could find beyond a reasonable doubt that DiPasquale had been convicted of a predicate felony.[10] For this reason, we will reverse and remand so that the district court may dismiss the indictment.[11] Our mandate shall issue forthwith.

---

9. The standard is whether a rational finder of fact, viewing the evidence in the light most favorable to the government, could find proof of guilt beyond a reasonable doubt. *Burks v. United States*, 437 U.S. 1, 4, 16–17, 98 S.Ct. 2141, 2143, 2149–2150, 57 L.Ed.2d 1 (1978).

10. The government notes that DiPasquale's counsel failed to renew his motion for a judgment of acquittal at the close of all the evidence. This fact does not bar relief. We hold that the submission of this case to the jury was plain error under Rule 52(b), Federal Rules of Criminal Procedure.

   Chief Judge Seitz agrees that DiPasquale's failure to renew his motion for a judgment of acquittal at the close of the evidence does not bar relief, but for a different reason. DiPasquale made a post-verdict motion to "dismiss the indictment against him or alternatively, [to grant a new trial]." Because one of the errors alleged was insufficient evidence to convict, Chief Judge Seitz would hold that the defendant's post-verdict motion was in effect a motion for a judgment of acquittal, and would so treat it.

11. In light of our assessment of the sufficiency of the evidence, we do not reach DiPasquale's constitutional claim that he was denied effective assistance of counsel.