**Keith Allan MINES, Petitioner,**

v.

**NATIONAL TRANSPORTATION SAFETY BOARD, et al.,**
**Respondents.**

**No. 87–3995.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 29, 1988.

Decided Dec. 7, 1988.

---

viction" for purposes of federal aviation regulation providing for revocation of pilot certificate on conviction of drug charge. 18 U.S.C.(1982 Ed.) §§ 5005–5026.

---

Jeannette A. Paskin, Mark Weigand, Zamplas, Paskin, Nagi, Baxter, Johnson & Walker, P.C., Detroit, Mich., Leonard E. Nagi, Daniel J. Seymour, argued, for petitioner.

John M. Stuhldreher, Gen. Counsel, Nat. Transp. Safety Bd., Office of the Adm. Law Judges, Washington, D.C., Peter J. Lynch, Acting Manager, Enforcement Proceedings Branch, Office of Chief Counsel—FAA, Washington, D.C., Vivian B. Wiesner, argued, Glynn Brown, Des Plaines, Ill., for respondents.

Before WELLFORD and NELSON, Circuit Judges, and McQUADE, District Judge.[*]

McQUADE, District Judge.

This matter is before the court on a petition for review of an order of the respondent National Transportation Safety Board ["NTSB"] that affirmed an order of the Federal Aviation Administration ["FAA"] revoking petitioner Keith Allan Mines' Airline Transport Pilot Certificate for a violation of Federal Aviation Regulations ["FAR"], 14 C.F.R. § 61.15(a).[1]

On October 18, 1983, Mines pled guilty in United States District Court for the Southern District of Texas to a charge of conspiracy to possess, with intent to distribute, a quantity of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The judge in that case, believing that Mines would benefit by treatment under the Youth Corrections Act ["YCA"], 18 U.S.C. §§ 5005–5026 (repealed October 12, 1984), suspended Mines' sentence pursuant to § 5010(a) of

---

[*] The Honorable Richard B. McQuade, Jr., United States District Court for the Northern District of Ohio, sitting by designation.

1. 14 C.F.R. § 61.15 Offenses involving alcohol or drugs.
    (a) A conviction for the violation of any Federal or state statute relating to the growing, processing, manufacture, sale, disposition, possession, transportation, or importation of narcotic drugs, marijuana, or depressant or stimulant drugs or substances is grounds for— ...
    (2) Suspension or revocation of any certificate or rating issued under this part.

the YCA and placed him on probation with supervision for five years.[2] While on probation, Mines was required to perform 300 hours of community service in a program developed by the U.S. Probation Department. On August 26, 1986, the same court unconditionally discharged Mines from probation and issued a Certificate of Vacation of Conviction pursuant to § 5021(b) of the YCA.[3]

Prior to the setting aside of Mines' conviction, however, the FAA revoked Mines' Airline Transport Pilot Certificate on March 8, 1985. Mines filed a notice of appeal with the NTSB. The FAA argued that because of Mines' conviction in 1983, he was in violation of FAR § 61.15(a), which provides for the revocation of any pilot certificate for conviction on a drug charge. *See supra* note 1. On May 22, 1985, the NTSB Administrative Law Judge [hereinafter "ALJ"] granted the FAA's motion for summary judgment. The ALJ's order was reversed and remanded by the NTSB, however, for determination of whether the operation of an aircraft was involved in the conspiracy for which Mines had been convicted. On August 27, 1986, the day after Mines' conviction was set aside, a second hearing was held before an ALJ, who found that there was sufficient evidence to establish that an aircraft had been involved in the conspiracy. On July 31, 1987, the NTSB affirmed the ALJ's findings and upheld the FAA's revocation of Mines' pilot certificate on the ground that the YCA did not "exclude convictions by youth offenders from consideration by a

federal agency in determining such a person's qualification to hold a federal license or certificate." NTSB Opinion and Order at 5.

On this petition for review, Mines argues that once his conviction was set aside pursuant to the YCA, the NTSB was not permitted to consider it as the predicate conviction in its finding of a violation of FAR § 61.15(a). Mines argues that to permit the NTSB to use a conviction that has been set aside pursuant to the YCA as grounds for revoking a pilot certificate would confound the intent of Congress to provide the YCA as an alternate means of sentencing and rehabilitating youthful offenders. Mines also argues that there was insufficient evidence to support the ALJ's finding that his aircraft was involved in the 1983 conspiracy conviction.

To support the decision to revoke Mines' pilot certificate, the NTSB argues that Congress did not intend that the setting aside of a conviction under the YCA would render that conviction void for all purposes. Rather, the NTSB contends, there are instances where a significant public interest should override the rehabilitative purposes of the YCA. Moreover, the NTSB asserts that the YCA is a sentencing statute, and not an expungement statute.

■ For the reasons stated below, we reverse the NTSB's order revoking Mines' pilot certificate. First, we reject the NTSB's argument that the YCA is not an expungement statute.[4] We held in *United*

---

2. Mines was 24 years old when the judge determined that Mines qualified as a "youthful offender." The YCA is applicable to qualified offenders between the ages of 22 and 26. Although we may dispute the judgment that someone 24 years old should be considered a "youthful offender," that is a judgment for Congress, not this court, to make.

3. 18 U.S.C. § 5021(b) (repealed October 12, 1984).

   Where a youthful offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youthful offender from probation prior to the expiration of the maximum period of probation thereto fixed by the court, which discharge shall automatically set aside

the conviction, and the court shall issue to the youthful offender a certificate to that effect. The issue of whether the district judge in Texas properly continued to treat Mines under the YCA after its repeal was not raised in the administrative hearings or on this appeal. We assume that the district judge acted properly. In construing this legislation, it would be improper for us to take into account the fact that the legislation has been repealed.

4. The word "expungement" is not used consistently by the courts. In *United States v. Fryer*, 545 F.2d 11 (6th Cir.1976), we used "expungement" to refer to an official act that eliminates a conviction from the defendant's record. In *United States v. Doe*, 556 F.2d 391 (6th Cir.1977), we used the same word in a narrower sense to refer to the obliteration of the physical records

*States v. Fryer*, 545 F.2d 11 (6th Cir.1976), that a conviction set aside under the YCA could not constitute a "conviction" for purposes of 18 U.S.C.App. § 1202(a) (illegal possession of firearms) and 18 U.S.C. § 922(a)(6) (making a false statement to a federally licensed seller of firearms in connection with the purchase of a firearm). We stated that the YCA, "by legislative design an expungement statute," is intended "to give the offender a second chance free from any record of conviction." 545 F.2d at 13. Upon a careful analysis of the legislative history of the YCA, the District of Columbia Circuit came to the same conclusion in *Doe v. Webster*, 606 F.2d 1226 (D.C.Cir.1979), stating:

> [The drafters] primary concern was that rehabilitated youth offenders be spared the far more common and pervasive social stigma and loss of economic opportunity that in this society accompany the "ex-con" label.... [T]hey intended to give youthful ex-offenders a fresh start, free from the stain of a criminal conviction, and an opportunity to clean their slates to afford them a second chance, in terms of both jobs and standing in the community.

*Id.* at 1234–35.

We are not persuaded by the respondent's suggestion that *Fryer* should be reconsidered in light of the Supreme Court's decision in *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983). In *Dickerson*, the Court held that fire-arms disabilities imposed by the Gun Control Act of 1968, 18 U.S.C. §§ 921–928, applied to a person whose conviction was subsequently expunged under state law. The Gun Control Act provides that it is unlawful for any person "who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to transport or receive firearms or ammunition in interstate commerce. *Id.* § 922(g), (h). The

Court refused to construe the words of the statute ("any person ... who has been convicted") as providing for an exception for a person whose conviction has been expunged under state law.

The statute construed by the Court in *Dickerson* was not the Youth Corrections Act, but rather, the Gun Control Act of 1968. Whether the Youth Corrections Act is a sentencing statute or an expungement statute was simply not before the Court. More to the point, the question of when the rehabilitative purpose of the YCA should yield to other regulatory schemes was not presented nor answered in *Dickerson*. Therefore, we conclude that the interpretation given the YCA in *Fryer*, that the effect of the YCA is to expunge a conviction from the defendant's record, controls the outcome of this case.

■ The NTSB contends that despite the rehabilitative purposes of the YCA and the effect of expungement under the Act, the public's interest in aviation safety demands that Mines' conviction be taken into account in considering his qualifications to be an air pilot. The premise of FAR § 61.15(a) is that a person who has violated a drug statute demonstrates an unwillingness to abide by the regulations required for safety in air transportation. Respondent's Brief at 16. The animating principle of the Youth Corrections Act, however, is that a person who has violated the law and who qualifies for treatment under the Act is, notwithstanding a conviction, to be considered fully rehabilitated. That is to say, whatever negative inferences are normally drawn as to a person who has been convicted of a crime, those inferences are not to be drawn as to a person whom the sentencing judge has determined would benefit from being given a second chance and a clean slate pursuant to the YCA. *See Dorszynski v. United States*, 418 U.S. 424, 431–35, 94 S.Ct. 3042, 3046–49, 41 L.Ed.2d 855 (1974); *United States v. Arrington*,

---

themselves. In *Doe*, we held that the YCA is not an expungement statute in the narrow sense of providing for the actual destruction of the record of conviction. Here we are using the word in the sense it was used in *Fryer*. *See*

*United States v. Bush*, 438 F.Supp. 839, 840 n. 1 (E.D.Pa.1977) (distinction between "expungement" (elimination of conviction from the defendant's record) and "expunction" (destruction of the physical records)).

618 F.2d 1119, 1124 (5th Cir.1980), *cert. denied*, 449 U.S. 1086, 101 S.Ct. 876, 66 L.Ed.2d 812 (1981); *Doe v. Webster*, 606 F.2d 1226, 1234–41 (D.C.Cir.1979); *United States v. Doe*, 556 F.2d 391, 392 (6th Cir. 1977).

Therefore, the assumption of the FAR at issue in Mines' case (that his prior conviction marks him as one who has demonstrated an unwillingness to conform to the law, and hence, a threat to aviation safety), is overcome by virtue of that conviction having been set aside pursuant to the YCA. *See United States v. Pagan*, 721 F.2d 24, 30 (2d Cir.1983) (because setting aside a conviction implies that the offender has been rehabilitated, admission of defendant's prior conviction, which had been set aside under YCA, for impeachment purposes was ground for ordering a new trial). In a similar case, the Ninth Circuit held that the FAA's regulations disqualifying all prior alcoholics from receiving a medical certificate and a pilot certificate were invalid under the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment, and Rehabilitation Act of 1980, 42 U.S.C. § 290dd–1(b), which provides that no person may be denied a federal license solely on the ground of prior alcohol abuse. *Jensen v. Administrator of Federal Aviation Administration*, 641 F.2d 797 (9th Cir. 1981), vacated, 680 F.2d 593 (9th Cir.1982).

We recognize the grave danger that drugs pose to our society, particularly in terms of safety in transportation, but there is no provision in the YCA that limits the setting aside of a conviction on drug charges when aviation safety or other important policies are at issue. The dissent characterizes this case as a choice between aviation safety and rehabilitation of youthful offenders. There is, however, nothing in the YCA that allows us to choose whether to give effect to its terms.

We conclude that a conviction set aside under the Youth Corrections Act may not constitute a "conviction" for purposes of Federal Aviation Regulations § 61.15(a). Accordingly, the order of the National Transportation Safety Board is REVERSED.

DAVID A. NELSON, Circuit Judge, dissenting.

The Federal Aviation Program, which is codified at 49 U.S.C.App. §§ 1301 *et seq.*, makes it the "duty" of the Federal Aviation Administrator to prescribe such rules and regulations as he may find necessary "to provide adequately for national security and safety in air commerce." 49 U.S.C. App. § 1421(a)(6). It was pursuant to this congressional mandate that the Administrator adopted the regulation providing for suspension or revocation of the license of a pilot who has been convicted of an offense involving alcohol or drugs.

The Federal Youth Corrections Act, prior to its repeal in 1984, gave federal judges discretion to set aside the criminal convictions of young offenders who had been placed on probation under the Act:

> "Where a youthful offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youthful offender from probation prior to the expiration of the maximum period of probation thereto fixed by the court, which discharge shall automatically set aside the conviction, and the court shall issue to the youthful offender a certificate to that effect." 18 U.S.C. § 5021(b).

The purpose of this provision was to "promote the rehabilitation of those who in the opinion of the sentencing judge show promise of becoming useful citizens, and so [to] avoid the degenerative and needless transformation of many of these young persons into habitual criminals." H.R.Rep. No. 2979, 81st Cong.2d Sess. (1950), reprinted in [1950] U.S.Code Cong. & Admin.News 3983.

The dual objectives of Congress—to promote safety in the skies and to promote the rehabilitation of young people who break the law—seldom come into conflict. A straightforward application of the rule relating to safety normally has no implications for the rule relating to rehabilitation, and vice versa. In the case at bar, however, one rule must necessarily be given a broader application than the other. The

panel majority has selected the rule relating to rehabilitation as the one that is to receive the more expansive interpretation, but on the facts before us, I would make the opposite choice.

Although he qualified as a "youthful" offender, Petitioner Keith Allan Mines was 24 years of age when he committed the offense to which he subsequently pleaded guilty. Mr. Mines owned an airplane in which, as he told the Drug Enforcement Administration agent who arrested him, he had flown from Dallas to Brownsville in search of a load of marijuana. He was carrying more than $6,000, and he told the DEA agent that he had planned to use the money to buy 100 pounds of marijuana which he would then fly back to Dallas. He was apprehended before he could make the purchase, and his plane was seized and sold by the government.

In adopting the regulation under which Mr. Mines' airline transport pilot's certificate was revoked, the Federal Aviation Administration said, in effect, this: "We think the skies will be safer if we withhold flying privileges from men who have been caught using airplanes in the illegal drug business." That is the kind of judgment Congress pays the FAA to make, of course, and such judgments are entitled to considerable deference.

An Administrative Law Judge found, and the National Transportation Safety Board confirmed, that air safety and the public interest required affirmance of the FAA order revoking Mr. Mines' pilot's certificate. I cannot say—and I do not understand Mr. Mines seriously to argue—that the safety determinations contained in this record lack factual support. Mr. Mines' argument, rather, boils down to the proposition that the interests of safety must yield to the interests of rehabilitation, because that is what the Youth Corrections Act requires. I do not find the argument persuasive.

Nothing in the Youth Corrections Act or in its legislative history compels the conclusion that a pilot who has been convicted on a drug charge may require the Safety Board to find that it is safe to let him fly airplanes merely because the sentencing judge is of the "opinion" that the pilot shows "promise" of becoming a useful citizen. Nothing in the Act compels the conclusion that the Safety Board must ignore the record of a conviction which, although subsequently set aside for rehabilitative purposes, did take place as a matter of historic fact.

Unlike the Court of Appeals for the District of Columbia Circuit (see *Doe v. Webster*, 606 F.2d 1226 (D.C.Cir.1979)), this court does not read the Youth Corrections Act as entitling the offender to have the record of his conviction physically expunged. See *United States v. Doe*, 556 F.2d 391, 393 (6th Cir.1977), where, noting that "there is no provision in the Act which authorizes or requires obliteration of the court record of conviction," we upheld a district court's refusal to order the record of the defendant's conviction expunged after the conviction had been set aside under the Act. If the physical record of the vacated conviction must remain in existence, it is far from self-evident that there are no uses whatever to which the record may properly be put by officials who have no responsibility for the operation of the justice system, but who do have a duty to provide for air safety.

It is clear, to be sure, that a court may not vacate a youthful offender's conviction and then treat the beneficiary of this discretionary act as a convicted felon for purposes of determining guilt under the statute making it a crime for convicted felons to receive or possess firearms. *United States v. Fryer*, 545 F.2d 11 (6th Cir.1976). But the question in the case at bar is not whether a court may find Mr. Mines guilty of that sort of status offense on the strength of a drug conviction which the court itself has previously set aside. The question, rather, is whether safety officials may revoke Mr. Mines' flying license on the strength of a drug conviction which did in fact occur and which, in their judgment as safety officials having nothing to do with enforcement of the criminal laws, suggests that Mr. Mines is not the sort of

person who can safely be accorded the privilege of piloting airplanes.

The two questions are very different—and to my mind, the fact that Mr. Mines could not have been sent to jail under the federal firearms law does not require that he be sent back into the skies as one who has been found to meet the stringent safety requirements of the Federal Aviation Administration. I see no logical inconsistency between the opinion of the sentencing judge that Mr. Mines shows promise of becoming a useful citizen and the opinion of the Safety Board that he still does not belong in the cockpit of an airplane.

It is worth noting, finally, that while the Federal Aviation Program is still on the statute books, the Youth Corrections Act is not. Congress repealed the latter statute effective October 12, 1984, one year after Mr. Mines was convicted. Pub.L. 98–473, Title II, § 218(a)(8), 98 Stat. 2027. Because Mr. Mines had been sentenced under the Youth Corrections Act, I assume that the sentencing court was correct in believing that it retained authority to set the conviction aside under 18 U.S.C. § 5021(b) even after the repeal of that section. The court did set the conviction aside, in any event, on August 26, 1986. The Safety Board issued its opinion and order on July 31, 1987, almost three years after the Youth Corrections Act had been repealed. Given that chronology, I am not at all sure that Congress would wish us at this late date to vindicate Mr. Mines' interest in escaping the "social stigma and loss of economic opportunity that in this society accompany the 'ex-con' label," *Doe v. Webster, supra,* 606 F.2d at 1234, when that vindication comes at the expense of a safety program which the elected representatives of "this society" have never seen fit to jettison.

I would affirm the order of the Safety Board.