# In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-3995

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERTO SERRANO, **also known as** EDDIE RONCONE,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 03 CR 24—**Theresa L. Springmann**, *Judge.*

———————

ARGUED NOVEMBER 30, 2005—DECIDED JANUARY 20, 2006

———————

Before ROVNER, WOOD, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Roberto Serrano, also known as Eddie Roncone,[1] was tried and convicted for aiding and abetting distribution of cocaine in violation of 21 U.S.C. § 41(a)(1) and 18 U.S.C. § 2. In this appeal he challenges

———————

[1] Serrano testified at his trial that he began using the alias Eddie Roncone (and also procured a fraudulent social security card in that name) after he was convicted of drunk driving under his real name in California.

certain evidence introduced at his trial. For reasons we will explain, we affirm the district court's decision to admit the evidence.

In February 2003, Fort Wayne, Indiana, undercover police officer Steven Espinoza purchased a quarter-ounce of cocaine from one Jose Hernandez at a residence, 4506 Spatz Avenue in Fort Wayne. The officer subsequently arranged to make a larger buy of one and a half kilograms for some $33,000.

On April 4, 2003, Espinoza and another undercover officer met Hernandez at a prearranged location, then proceeded to the 4506 Spatz Avenue residence. There were four other people in the house, one of whom was Serrano. Once inside, Hernandez placed a one-kilo brick of cocaine on the dining room table. Espinoza asked for the rest of it. According to Espinoza's testimony at trial, at that point Serrano got up from a couch in the adjoining room and appeared in the dining room doorway. Hernandez asked Serrano in Spanish where the other half-kilo was. Serrano twice pointed to a cabinet and said the cocaine was "in the corner." Hernandez then retrieved another half-kilo from inside the cabinet and handed it to Espinoza.

After the deal was complete, other officers entered, detained the suspects, and procured a search warrant. In Serrano's wallet officers found an Indiana driver's license with Serrano's picture, the name Eddie Roncone, and the address 4506 Spatz Avenue. They also found a state-issued ID card with Serrano's picture, the name Eddie Roncone, and an address of 3317 Evans Street in Fort Wayne. In a search of the house, police found two handguns, a large bag of marijuana, scales, and materials used to package and wrap cocaine; in the basement they found a cocaine press and chemicals used for cutting the drug.

After being taken to the police station and waiving his right to counsel, Serrano told the officer who interviewed

him that he lived at the Spatz Avenue address but had never been into the basement. Later, at his trial, Serrano testified that he had "previously lived at Spatz," but that at the time of the bust he was living at 547 East Pettit.

At trial, in addition to Serrano's driver's license, state ID, and other exhibits, the government introduced automobile insurance cards, insurance declarations, and related correspondence, all bearing the name Eddie Roncone and the address 4506 Spatz Avenue. Five of these documents were found inside the house during the search; the other three came out of the trash which officers had pulled from the alley behind the house in the days before the April 4 drug buy and arrest.

Serrano's attorney objected on the grounds that the documents were hearsay, but the judge (The Honorable Theresa L. Springmann) allowed the jury to see them. Serrano now appeals that ruling. As usual, we review evidentiary rulings with deference and uphold them unless it is clear that the trial judge has abused her discretion. *United States v. Bonty*, 383 F.3d 575, 579 (7th Cir. 2004).

Hearsay is a statement, other than one made by the declarant while testifying, that is "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Because the insurance documents carry a name and address, Serrano contends they were offered for their "assertion" that "Eddie Roncone" lived at 4506 Spatz Avenue. Since no one from the insurance company testified at trial, and since the documents apparently are not covered by any exception to the hearsay bar, Serrano concludes they were inadmissible.

Serrano was convicted under the aiding and abetting statute, 18 U.S.C. § 2. The crime of aiding and abetting requires knowledge of the illegal activity that is being aided and abetted, a desire to help it succeed, and some act of helping. *United States v. Zafiro*, 945 F.2d 881, 887 (7th Cir.

1991). Serrano doesn't deny he was present at the drug transaction or that he helped it along by indicating where some of the cocaine was kept. But he maintains that unless the government showed he was more than a visitor to the Spatz Avenue address, the jury could not have found that he had knowledge of and intent to participate in the drug enterprise being conducted there. "The residency issue was essentially," he says, his "only defense."

Many courts, including ours, have held that merchandise receipts, utility bills, and similar documents are not hearsay when they are offered as circumstantial evidence to link a defendant to a particular place, to other defendants, or to an illegal item. *United States v. Thornton*, 197 F.3d 241, 251 (7th Cir. 1999) (receipts, utility bills, and business cards were admissible to show the relationship of coconspirators to each other or to an item seized); *United States v. McIntyre*, 997 F.2d 687, 702-03 (10th Cir. 1993) (testimony regarding rental, money order, and credit card receipts was admissible to link defendants together and to certain locations); *United States v. Patrick*, 959 F.2d 991, 999-1000 (D.C. Cir. 1992) (television sales receipt bearing defendant's name was admissible because it was found in the same bedroom as cocaine and a weapon); *United States v. Arrington*, 618 F.2d 1119, 1128 (5th Cir. 1980) (utility bills found during search of house were admissible to prove defendant resided there).[2]

---

[2] Although some of these cases, including *Thornton*, arose in the context of conspiracies, that does not preclude the application of their principles to other settings. The inquiry is whether evidence, while not introduced for the truth of the matter asserted, nonetheless is probative of some element the government must prove. For conspiracy, that might mean evidence of a preexisting agreement. For other crimes it might mean connecting a defendant to a place, to events, or to an item of contraband.

In such cases, the documents are not introduced for the truth of the matters they assert—for example, that the defendant rented a car, bought a television, or used 500 kilowatt hours of electricity. Rather, the documents are "introduced for the inferences that may be drawn circumstantially from [their] existence or from where [they are] found, regardless of whether the assertions contained therein are true or not." *McIntyre*, 997 F.2d at 702 n.16. *See also* Fed. R. Evid. 801 Advisory Committee Notes to 1972 Proposed Rules (noting that the rule excludes from the definition of hearsay "verbal conduct which is assertive but offered as a basis for inferring something other than the matter asserted").

Applying this reasoning to our case, the insurance documents were probative of a connection between Serrano and the house where he was observed assisting the commission of a cocaine-trafficking crime. The government's case did not depend on proving that on April 4, 2003, Serrano was legally domiciled at 4506 Spatz Avenue, as opposed to the address on his state ID, or the address he gave at trial. Rather, the government had to show that Serrano was more than someone who had just stopped by to borrow a lawnmower, then unwittingly found himself helping to facilitate a drug sale. Serrano does not maintain that the police planted evidence or that someone else's refuse was intermingled with the garbage behind 4506 Spatz Avenue. Thus, the insurance documents were admissible for the inference that could be drawn from where they were found. When someone's important personal papers turn up inside a house or in the trash right outside, it is reasonable to believe, in the absence of some believable alternative explanation, that their owner is affiliated in some way with the premises.

Because they contained written information about his name and address, Serrano argues that the insurance documents "could have come from anywhere and still served

the government's purpose." But that's not so. Imagine that, rather than searching the house or its trash, the police had instead combed through the city landfill, found the same documents, and sought to use them to show that Roncone/Serrano lived at or was somehow connected to 4506 Spatz Avenue. That *would* be hearsay; the documents would lose their inferential value because they weren't found anywhere near the scene of a crime.

Finally, Serrano asserts that had the insurance documents "contained nothing more than the identifying name they would have been admissible." But the fact they also contained an address, he believes, gave them "evidentiary significance totally independent of their physical location," and meant that "the jury would take with it when it retired to deliberate eight documents bolstering the government's case and attacking Mr. Serrano's only defense." We don't agree that the fact the documents bore an address made them hearsay. Judge Springmann allowed them with the understanding the government was using them only to show Serrano was "connected" to the house. Had Serrano's trial counsel wanted the judge to lecture the jury about the fine points of hearsay, he could have asked for a limiting instruction on the evidence, but he did not.

It should also be noted that it was Serrano's trial counsel, not the government, who drew attention to the documents during closing arguments, in the course of trying to explain why his client maintained multiple addresses. Indeed, Serrano's trial counsel earlier had introduced utility bills in an attempt to show that Serrano really lived at 547 East Pettit. In contrast to the circumstantial value of the insurance documents, trying to use the utility bills in this way clearly *was* hearsay.

The judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*