UNITED STATES of America,
Plaintiff–Appellee,

v.

Roderick E. RICHARDS,
Defendant–Appellant.

No. 90–3443.

United States Court of Appeals,
Seventh Circuit.

Argued July 10, 1991.

Decided July 30, 1991.

As Amended July 30, 1991.

---

Robert Haida, Asst. U.S. Atty., Christopher W. Dysart, Office of the U.S. Atty., Criminal Div., East St. Louis, Ill., for plaintiff-appellee.

Paul M. Storment, Jr., Storment & Read, Belleville, Ill., for defendant-appellant.

Before CUDAHY, EASTERBROOK, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

A jury convicted defendant Roderick Richards of possession with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1), using and carrying a firearm during a drug-trafficking offense in violation of 18 U.S.C. § 924(c), and possession of a weapon by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924. He raises only one issue on appeal: whether the district court erred in denying his

motion to suppress evidence in violation of the Fourth Amendment.

On January 12, 1990, someone killed Johnny Adams in East St. Louis, Illinois. The police opened an investigation and began looking for a suspect named Anthony "Ant" Moore. Two detectives, Gerald Crenshaw and Ronald Mathews, met a neighbor, Hazel Lockridge, outside Moore's home. She said that the day before she had seen Moore driving in a red truck with Richards, known as Chili Rich. She then pointed out Richards' house on the same block with the red truck parked in front. A man on the street also identified Richards' house. The officers wanted to question Richards about Moore's whereabouts.

In front of Richards' house the officers met a woman named Ollie Smith, who directed them to the apartment on the second floor of the two-flat building. She said that Richards was home at the time. The officers, dressed in jeans, tee-shirts, and baseball caps, entered the entrance and climbed the narrow interior staircase to the second floor. Officer Crenshaw led the way, with Officer Mathews following. Standing one step down from the door, Crenshaw knocked. They heard no reply. Crenshaw knocked again, and this time a voice asked, "who is it?" Crenshaw said, "it's the police." There was a pause and the voice said, "you got to be kidding." Crenshaw said, "open the door . . . you can see my I.D." There was another pause and Crenshaw repeated that he would show his I.D. After a few seconds the door swung open and Richards, a large man, pointed a Browning 9 millimeter semi-automatic handgun at Crenshaw's chest. Crenshaw reacted quickly, sticking his fingers behind the trigger of the gun so that it would not fire and pushing it away from him. In doing so he pushed Richards, who appeared shocked, back into a three to four foot hallway inside of the apartment. Crenshaw took the gun and ordered Richards to lie face down on the floor straddling the hallway and the living room of the apartment. He also handcuffed Richards.

As he saw the gun, Mathews drew his revolver and stepped past the two men through the hallway. Immediately to his left he saw a small end table and a couch in the living room. On the table was a plate with a white powdery substance and a razor blade. Mathews told Crenshaw that there was coke in the living room and then told Richards he was under arrest. Mathews asked Richards if anyone else was in the apartment. Richards said nothing. He asked again, but got no reply.

Mathews then made a protective sweep. He stepped inside one bedroom and observed that on top of a chest of drawers were several plates containing a white powder and razor blades. Next he checked the bathroom and another bedroom. He then moved to the end of the hallway and into the kitchen where he saw several more plates containing a white powder, plastic bags, razor blades, test tubes, baking soda and a miniature torch. Having secured the apartment, the officers called for assistance.

A grand jury originally charged Richards with two counts. On Count 1, Richards was charged with possession with intent to distribute 50 grams of "crack" cocaine and 200 grams of cocaine in violation of section 841(a)(1). On Count 2, Richards was charged with using and carrying a Browning 9 millimeter semi-automatic handgun in connection with a drug offense in violation of section 924(c). In a superseding indictment, the grand jury added Count 3 for felony possession of a firearm in violation of sections 922(g)(1) and 924.

Prior to trial, Richards filed a motion to suppress the evidence seized at his home arguing that the officers did not have either a warrant or probable cause to enter the apartment. At a hearing on the motion, both Crenshaw and Mathews testified to the above events. Richards also testified, stating that when he opened the door the gun was at his side. He added that when he recognized that Crenshaw was a police officer, he handed him the gun and let Crenshaw know that he was not trying to pull it on him.

The district court denied the motion to suppress. The court noted that although Richards argued that the officers could not have seen the cocaine on the end table from the hallway, he offered no evidence to that effect. With his motion, Richards had supplied eleven photographs of his apartment, but none depicted the length of the hallway or the view from the hallway into the living room.

The court held that this case did not trigger the protection afforded by the Fourth Amendment because the officers were lawfully on the premises when they entered the apartment to subdue Richards in response to the threat posed by the drawn gun. In light of these exigent circumstances, the court found that the officers acted rationally in subduing Richards and that the public interest in protecting police officers who are confronted by armed, threatening citizens is so high that neither a warrant nor probable cause was required. Regarding plain view, the court held that the incriminating nature of the cocaine was readily apparent, and the exigent circumstances gave the officers the lawful right of access to the cocaine. The court also held that the officers were justified in conducting a limited protective sweep of the apartment because, as stated by Mathews, Richards was associated with a murder investigation suspect, he opened the door with a gun, the end table contained cocaine, and he failed to answer Mathew's question as to whether anyone else was in the apartment.

A jury found Richards guilty on all counts. The district court sentenced him to 63 months imprisonment on both Counts 1 and 3 to be served concurrently, and 60 months on Count 2 to be served consecutively for a total term of 123 months. In addition, the court ordered four years of supervised release.

■ On appeal Richards makes a number of arguments. First, he argues that

the Fourth Amendment applies to this case and that the officers lacked either a warrant or probable cause to enter and search Richards' apartment. He bases this argument on the fact that he did not try to shoot the officers, he surrendered the weapon, he was not charged with assault, and he was secured on the floor within minutes of answering the door.[1]

■ Because of the factual nature of the inquiry, we give deference to the factual findings made by the district court during a suppression hearing. *United States v. Parker*, 936 F.2d 950, 953 (7th Cir.1991). Legal determinations made in suppression hearings, by contrast, are subject to *de novo* review. *Id.* at 953 n. 1.

■ The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The physical entry of the home is the chief evil against which the Fourth Amendment is directed. *Welsh v. Wisconsin*, 466 U.S. 740, 749–50, 104 S.Ct. 2091, 2097–98, 80 L.Ed.2d 732 (1984). The district court stated that the Fourth Amendment was not implicated because the officers were at Richards' apartment merely as a part of a homicide investigation and not to search his home or to arrest him. In our opinion and contrary to that of the district court, the Fourth Amendment was implicated prior to the time that Richards opened the door. But at the moment that Richards pointed the gun at officer Crenshaw's chest, the two officers had probable cause to arrest him for assaulting a police officer with a dangerous weapon. This was a crime committed in the officers presence and the officers were entitled to act in self-defense. That Richards was not charged with assault does not change the fact that the officers reasonably believed at the time of the incident that their lives

---

**1.** In a one sentence argument, Richards mentions that as to Count 2 on carrying a weapon during a drug trafficking offense, no nexus existed between the drugs and the gun. He cites neither case law or facts to support this argument. This court is not required to make an

argument for the parties on appeal, and we consider this contention waived. Fed.R.App.P. 28(a)(4); *John v. Barron*, 897 F.2d 1387, 1393 (7th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990).

were being threatened and that they had probable cause to disarm and arrest him.

■ The officers were also entitled to enter the apartment to effectuate the arrest for the assault. They could have turned tail and fled down the narrow staircase, hoping that Richards would not shoot them in the back as they ran, but the only real option was for Crenshaw to disarm Richards before he had an opportunity to open fire. In fact, when Crenshaw stuck his fingers behind the trigger and pushed Richards' arm to one side, the only place the two could go was back into the apartment. Richards' photos show that the hallway had no landing outside the apartment door where the men could tussle. The doorway led down a long flight of steps.

The officers did not need a warrant or Richards' consent to enter the apartment in this case any more than an officer needs a warrant to enter the house of a person who is holding hostages inside. They were entitled to enter the apartment to disarm and arrest the defendant, and thereby prevent a crime in progress. For this reason, the Fourth Amendment was not violated.

■ Richards next contends that the protective sweep doctrine is inapplicable to this case because no articulable facts exist that would warrant an officer believing that the apartment harbored someone posing a danger, particularly when the officers knew of no criminal activity going on in his house or that anyone other than Richards was there. A protective sweep is a quick and limited search of a premises, incident to an arrest and conducted to protect the safety of police officers and others. *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 1094, 108 L.Ed.2d 276 (1990). It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding. *Id.* The Fourth Amendment permits a protective sweep if the search officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrants the officer in believing that the area swept harbored an individual posing a danger to the officer or others. *Id.*, 110 S.Ct. at 1095.

Given such a reasonable belief, the officers have an interest in assuring themselves that the house in which a suspect is being arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack. *Id.* at 1097–98; *see also Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (search of passenger compartment of automobile allowed if officer reasonably believes that suspect may gain immediate control of weapons); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (frisk for weapons allowed where reasonably prudent officer would be warranted in belief that he is dealing with an armed and dangerous individual). In fact, the risk of danger in the context of an arrest in the home is as great as, if not greater than, it is in an on-the-street or roadside investigatory encounter. *Buie*, 110 S.Ct. at 1098. An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings. *Id.*

■ During his testimony at the suppression hearing, Officer Mathews gave four reasons for proceeding with the protective sweep. First the officers knew that the day prior, Richards had been seen with Moore, a suspect in the murder investigation. When Richards met them at the door, the officers did not know whether Moore was inside the apartment. Next, Richards opened the door with a gun. This gave the officers a specific and articulable fact regarding Richards' apartment: that it harbored at least one and possibly more threatening gun owners, such as murder suspect Moore. Third, Mathews saw cocaine in the living room as soon as he entered. Fourth, Richards twice failed to answer Mathews' question about whether anyone else was in the house, although in our opinion, the officers would have been entitled to sweep the house even if Richards said that no one else was home. As an additional reason, and one alluded to by Richards before the district court, this neighborhood was one of the most violent and dangerous in East St. Louis. Given all these factors, Mathews made a reasonable

decision to sweep the apartment for other persons.

██ Officer Mathews' sweep was also limited in scope. He did not search through drawers or dawdle in each room looking for clues. He moved briefly through two bedrooms, the bathroom and kitchen. When satisfied that the apartment was secure he returned to the living room and called for assistance. The Court in *Buie* requires no more.

 If Mathews did not find an ambusher lying in wait, he did find plenty of cocaine and gadgets for manufacturing crack. Richards contends that the plain view doctrine is inapplicable to this case. To justify a warrantless seizure not only must the item be in plain view, its incriminating character must also be immediately apparent and the officer must have a lawful right of access to the object itself. *Horton v. California,* —— U.S. ——, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). First of all, the cocaine was clearly in plain view. The living room end table, the bedroom bureau, and the kitchen table all contained plates out in the open with a white powdery substance next to razor blades. In addition, the kitchen included a chemist's lab of test-tubes and torches used to make the crack, and baking soda for cutting the cocaine. Mathews saw all this during his protective sweep. The incriminating nature of these objects would be immediately apparent to any experienced police officer, and probably to the general public. Finally, as we have already discussed, the officers were entitled both to arrest Richards and to make the protective sweep, giving Mathews a lawful right of access to the evidence.

As we have indicated, the officers had probable cause to arrest Richards for a crime committed in their presence, that is pointing a gun in the chest of an officer who merely knocks at the door. They also had the right to act in self-defense to disarm Richards. Officer Mathews was entitled to make a protective sweep of the premises due to the threat of ambush, and the cocaine in the apartment was properly seized under the plain view doctrine. For these reasons the judgment of the district court is

AFFIRMED.