UNITED STATES of America, Appellee,

v.

Gary Anthony PATRICK, Appellant.

No. 90–3178.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 30, 1991.

Decided March 17, 1992.

As Amended March 17, 1992.

Richard Seligman, Washington, D.C. (appointed by this court) for appellant.

Nancy R. Page, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Kevin F. Flynn, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MIKVA, Chief Judge, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

Opinion concurring in part and dissenting from the judgment filed by Circuit Judge SENTELLE.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Appellant Gary A. Patrick was convicted of possession with intent to distribute more than five grams of cocaine base (crack) in violation of 21 U.S.C. § 841(a) and use of a firearm in relation to drug trafficking in violation of 18 U.S.C. § 924(c). Patrick now appeals on various grounds. We affirm in part but reverse his convictions and order a new trial because the district court

erroneously admitted prejudicial hearsay evidence against him.

## I.

On February 2, 1990, Patrick was arrested during a search by officers of the Metropolitan Police Department (MPD) of Apartment 103, 818 Chesapeake Street, S.E., Washington, D.C. Apartment 103 was a one bedroom apartment leased to Kevin Smith. Patrick had moved into the apartment without permission and had taken over the bedroom when Smith was hospitalized. He did not pay rent. He did, however, claim to have provided Smith with drugs.

After moving in, Patrick began to keep drugs and weapons in the apartment. Smith decided he wanted Patrick removed and spoke to a friend about the situation. The friend arranged for Smith to meet with MPD officers. During a meeting with the police on January 17, 1990, Smith signed a form authorizing the police to search his apartment. The form provided that "THIS PERMISSION IS GIVEN FOR NO LESS THAN TEN WORKING DAYS, AND GIVES THE MEMBERS OF THE METROPOLITAN POLICE DEPARTMENT PERMISSION TO ENTER MY PREMISES ANYTIME DAY OR NIGHT."

The police did not conduct the search until shortly after midnight on February 2nd. At that time, the police went to Smith's apartment. They knocked and announced and were let in by Smith. Hearing that the police were at the door, Patrick ran to the bedroom. On entering the apartment, the police began to secure it and found, in addition to Smith, four people in the living room. They also noticed that the bedroom door was open. The police immediately proceeded to the bedroom to determine if anyone was in it and to secure it. The police found Patrick half on and half off the bed with his left hand underneath it. The police ordered Patrick to stand. When he did, the police discovered in plain view a large amount of money, a beeper and a clear plastic bag containing 17.19 grams of 33% crack cocaine. The police arrested Patrick.

The police then searched the bedroom. They found a gun under the bed near where Patrick's hand had been, a large number of tennis shoes, inside one of which was a bracelet bearing the name "Gary," a television and a Circuit City sales receipt for a television set. The receipt bore both the serial and model numbers of the television found in the bedroom and indicated the name and address of the purchaser as "G.A. Patrick" of 818 Chesapeake Street, S.E. Apt 103, Washington, D.C., 20020. The police also found a triple beam scale in one of the apartment's closets bearing fingerprints which matched Patrick's.[1]

Thereafter, on March 1, 1990, Patrick was indicted for possession with intent to distribute over five grams of cocaine base (crack) in violation of 21 U.S.C. § 841(a), use of a firearm in relation to drug trafficking in violation of 18 U.S.C. § 924(c) and possession of a firearm without a serial number in violation of 26 U.S.C. § 5861(g).[2] Patrick moved to suppress the evidence seized during the police search. The district court denied Patrick's motion finding that:

> Smith consented to the search, that he did so voluntarily, that the consent was valid at the time of the search, that the officers entered the apartment after knocking and announcing, that they entered the bedroom in their efforts to secure the apartment for their own protection, that they asked the defendant to stand for their protection, and that the drugs and money were in plain view on the bed. The Court also finds that the officer's testimony concerning the drugs and money being in plain view is consistent with his testimony at the preliminary hearing.

*Memorandum Order* at 3.

On the eve of trial, the prosecutor notified Patrick that the fingerprints on the

---

**1.** This factual background comes from the district court's findings contained in its memorandum order denying Patrick's suppression motion.

**2.** The government eventually dismissed the charge of possession of a firearm without a serial number.

scale matched Patrick's. Although the prosecutor agreed not to use the evidence in his case-in-chief, the district court ruled *in limine* that, if Patrick argued there were no fingerprints linking him to the apartment, the government would be allowed to introduce evidence of the fingerprints in rebuttal.

Patrick's defense was that he was innocently present in the apartment and, when the police found him in the bedroom, he was actually cowering from them. In fact, other than the testimony of the police officers who conducted the search and found Patrick in the bedroom, there was no other trial testimony linking Patrick to the bedroom or the apartment for neither Smith nor any of the other persons found in the apartment testified.

During the trial, the prosecutor sought to introduce the television sales receipt over Patrick's hearsay objection. The trial court overruled the objection and admitted the receipt. Later, in its closing argument the government argued:

> Take, for example, an argument that might be made that that's not his apartment, that he doesn't live there, and that's not his bedroom, that he doesn't stay in that bedroom.
>
> Well, ladies and gentlemen, let's look at a couple of things that were taken out of that bedroom. Look at government's exhibit no. 14, the television receipt. You all had a chance to look at this closely before when it was admitted into evidence. G.A. Patrick, 818 Chesapeake Street, Southeast, Washington, D.C. 20020.

Trial Transcript (Tr. T.) at 513. This reference was not the government's only use of the receipt. The government also used it to link Patrick to the television set the police had found in the bedroom, arguing "That TV receipt bears a serial number, a model number. I ask you, if you so desire, ask for government's exhibit 12, the television set ... You'll see it appears on government's exhibit No. 1 [a drawing of the apartment], in the bedroom."[3] *Id.*

Finally, Patrick requested an instruction on the lesser included offense of simple possession of less than five grams of cocaine base. The district court refused to give the instruction. It did, however, give a lesser included offense instruction on simple possession of more than five grams of cocaine base.

■ The jury convicted Patrick of possession with intent to distribute more than five grams of crack and use of a firearm in relation to drug trafficking. Patrick now appeals on the following grounds: (1) the search of the bedroom violated Patrick's rights under the fourth amendment and 18 U.S.C. § 3109; (2) the government violated Rule 16(a)(1)(D) of the Federal Rules of Criminal Procedure by failing to disclose the fingerprints found on the scale until the eve of trial and the district court's *in limine* ruling effectively prevented him from arguing that no fingerprints were found linking him to the drugs; (3) the trial court erroneously admitted the television sales receipt; (4) the trial court abused its discretion in failing to grant a mistrial after the jury observed the prosecutor hand a set of keys to one of the police witnesses[4]; and (5) the trial court erroneously declined to give Patrick's requested lesser included offense instruction.[5]

---

**3.** While the record indicates that Patrick did not object to either use of the receipt during closing argument, the government has not raised Patrick's failure to object. Moreover, at argument, the government conceded that using the receipt for these purposes was error but argued that the error was harmless. Furthermore, Patrick had previously objected to the admission of the receipt. For these reasons, we conclude that the issue has been adequately preserved.

**4.** The trial court found the keys inadmissible because of the government's failure to disclose them in discovery.

**5.** Because we order a new trial, we need not address whether the government's failure to disclose the fingerprints on the scale until the eve of trial and the district court's *in limine* ruling violated Fed.R.Crim.P. 16(a)(1)(D). Similarly, we need not decide whether the district court should have ordered a mistrial when the prosecutor handed one of his witnesses a set of keys. We are confident that the government will take proper measures to ensure that both the fingerprints and the keys will be properly disclosed to Patrick in advance of trial. We do, however, note the less than professional way in which the

## II.

■ We begin by addressing the legality of the police search of the apartment. Although Patrick raises several distinct arguments, we find them all unpersuasive.[6]

### A.

■ While the police need not obtain a warrant nor have probable cause when they search pursuant to a valid consent, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973), nonetheless a consensual search must satisfy the fourth amendment's requirement of reasonableness. *Florida v. Jimeno*, —— U.S. ——, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991); *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 2799, 111 L.Ed.2d 148 (1990).

Patrick first claims that the consent given here violated the fourth amendment because it was of indefinite duration. Whether or not an open-ended consent is in all instances lawful, an issue we do not decide, we are satisfied that this search did not violate the fourth amendment. Only twelve working days elapsed between Smith's execution of the consent form and the actual search. The form itself provided that the consent was valid for not *less* than ten working days; it did not specify when the consent was no longer valid. Given that the search occurred only two days after the minimum period for which it was

to last, we would be straining to conclude that the search was unreasonable.[7]

### B.

We next address Patrick's argument that he had an expectation of privacy in the bedroom and that Smith did not have authority to consent to a search of the bedroom. The district court did not expressly address these arguments in denying Patrick's suppression motion. As we read the district court's ruling, it relies on the officers' lawful presence on the premises pursuant to consent, their authority to do a protective sweep once they were on the premises and their lawful seizure of the evidence under the plain view doctrine.

■ We first note that, even if Smith could not have consented to the search of Patrick's bedroom, he could, as lessee of the apartment, unquestionably give the police authority to search the rest of it. Once the police were lawfully on the premises, they were authorized to conduct a protective sweep based on their reasonable belief that one of its inhabitants was trafficking in narcotics. *Cf. Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (during execution of arrest warrant, police authorized to do protective sweep of spaces in house where person posing danger to police could hide and launch attack if based on reasonable belief that area swept

---

government tried this case and reprove the government for it.

Finally, while we order a new trial and need not address whether the district court properly denied Patrick's requested jury instruction of simple possession, we are satisfied that the evidence supported the district court's charge. Moreover, we note, as have numerous other courts, that the quantity of drug possessed is not a constituent element of the offense of possession with intent to distribute under 21 U.S.C. § 841(a). Quantity is relevant only to punishment; the district judge, and not the jury, makes this determination. *See, e.g., United States v. Moreno*, 899 F.2d 465, 472–73 (6th Cir.1990); *United States v. Barnes*, 890 F.2d 545, 551 n. 6 (1st Cir.1989), *cert. denied,* 494 U.S. 1019, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990); *United States v. Powell,* 886 F.2d 81, 85 (4th Cir.1989), *cert. denied,* 493 U.S. 1084, 110 S.Ct. 1144, 107 L.Ed.2d 1049 (1990).

**6.** We review de novo the district court's ultimate conclusion that the search did not violate the fourth amendment. *Cf. Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485, 501, 104 S.Ct. 1949, 1959, 80 L.Ed.2d 502 (1984). We review the district court's findings in support of its conclusion, however, under the clearly erroneous standard of review. *United States v. Meyer,* 810 F.2d 1242, 1244 (D.C.Cir.1987), *cert. denied,* 485 U.S. 940, 108 S.Ct. 1121, 99 L.Ed.2d 281 (1988).

**7.** Patrick also argues that Smith did not intend his consent to last more than ten working days. Given Smith's testimony at the suppression hearing that he was still looking for the police to come after ten days and that he had made no effort to revoke his consent because he "wanted the stuff ... out of" his apartment, Suppression Hearing Transcript at 84–86, we cannot say that the district court's consent finding is clearly erroneous.

holds such person). We think the holding in *Buie*, notwithstanding the search there was conducted pursuant to a warrant and not consent, supports the police search here. Accordingly, the police validly entered the bedroom when they looked through the open door and saw Patrick inside.

■ Our review does not end here, however, for even when the police are validly on the premises, the plain view doctrine allows them to seize only that evidence whose incriminating character is "immediately apparent." *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990). In other words, to seize evidence under the plain view doctrine, the police must have probable cause to believe that the item being seized is evidence of crime. *See Arizona v. Hicks*, 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987).

■ We have no doubt that the police were authorized under the plain view doctrine to seize such items of evidence as the cocaine, the money and the beeper. *See, e.g., United States v. Halliman*, 923 F.2d 873, 880 (D.C.Cir.1991); *see also United States v. Hughes*, 940 F.2d 1125, 1127 (8th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 267, 116 L.Ed.2d 220 (1991); *United States v. Richards*, 937 F.2d 1287, 1292 (7th Cir. 1991); *United States v. Turner*, 933 F.2d 240, 244 (4th Cir.1991); *United States v. Wright*, 932 F.2d 868, 878 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991); *United States v. Curtis*, 931 F.2d 1011, 1013 (4th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 230, 116 L.Ed.2d 186 (1991). Moreover, their observation of these items gave the police probable cause to arrest Patrick, incident to which they could search those areas "within his immediate control" at the time. *See Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). Thus, on finding Patrick half on and half off the bed, the police properly searched under it and seized the gun. We also believe that the sales receipt and the television were properly seized because the record manifests that they were in plain view and their incriminating character (in that they tended to prove Patrick's dominion over the bedroom) was "immediately apparent." *Horton*, 110 S.Ct. at 2308. On the other hand, it seems unlikely that the "Gary" bracelet found inside one of the many sneakers in the room was in plain view and the record does not show that it was. Nevertheless, the bracelet evidence need not have been suppressed if another basis (such as consent) supports its seizure. *Cf. Thigpen v. Roberts*, 468 U.S. 27, 30, 104 S.Ct. 2916, 2918, 82 L.Ed.2d 23 (1984); *United States v. New York Tel. Co.*, 434 U.S. 159, 166 n. 8, 98 S.Ct. 364, 369 n. 8, 54 L.Ed.2d 376 (1977). Accordingly, we examine whether Smith could validly consent to the search of the bedroom.

■ We begin by assuming, without deciding, that Patrick had "a reasonable expectation of privacy" in the bedroom. *Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). But Patrick's reasonable expectation of privacy allows him to clear only the first of three hurdles he must clear to suppress the evidence. The remaining hurdles require that Patrick show not only that Smith did not have common authority over the bedroom, *see United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974), but also that the facts available to the police at the time of entry would not "'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990) (quoting *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). Because Patrick cannot show that Smith was not authorized to give consent, Patrick cannot clear the second hurdle and we do not reach the third one.[8]

---

**8.** We do not mean to suggest that at a suppression hearing, the defendant has the burden of proving that the person giving consent did not have common authority over the area searched or that the police did not have a reasonable belief that the person giving consent had author-

In *Matlock*, the Supreme Court noted that:

> [c]ommon authority ... rests ... on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7. Patrick argues that Smith did not have the authority to consent as evidenced by his testimony at the suppression hearing that he did not use the bedroom and was not free to go into Patrick's belongings. In our view, this argument gets Patrick only so far because it ignores the "assumption of the risk" approach adopted in *Matlock*. Indeed, as the Seventh Circuit recently noted:

> The underpinning of third-party consent is assumption of risk. One who shares a house or room or auto with another understands that the partner may invite strangers—that his privacy is not absolute, but contingent in large measure on the decisions of another. Decisions of either person define the extent of the privacy involved, a principle that does not depend on whether the stranger welcomed into the house turns out to be an agent or another drug dealer.

*United States v. Chaidez*, 919 F.2d 1193, 1202 (7th Cir.1990) (citations omitted), *cert. denied*, —— U.S. ——, 111 S.Ct. 2861, 115 L.Ed.2d 1028 (1991). We think that the "assumption of the risk" approach is particularly helpful in analyzing the facts of this case. Patrick moved into Smith's apartment without Smith's permission. He stayed on despite Smith's having asked him to leave. Thus, Patrick's privacy was not absolute but contingent on any action Smith might take. *Chaidez*, 919 F.2d at 1202. Under these circumstances, we think it is fair to conclude that Patrick assumed the risk that Smith would call on others to assist him in evicting Patrick. We therefore conclude that Smith was authorized to consent to the search of the bedroom and, accordingly, we reject Patrick's fourth amendment claim.

### C.

Finally we turn to Patrick's claim that the evidence should have been suppressed because the police violated the knock and announce requirements of 18 U.S.C. § 3109.[9] In particular, Patrick argues that the evidence should be suppressed because the police did not announce their purpose at the time of entry into the apartment and because the police did not knock and announce when they entered the bedroom. Both arguments are without merit.

First, as we have previously held, a consensual entry is not subject to the requirements of section 3109. *See United States v. Sheard*, 473 F.2d 139, 143 (D.C.Cir.1972), *cert. denied*, 412 U.S. 943, 93 S.Ct. 2784, 37 L.Ed.2d 404 (1973). Moreover, section 3109 requires the police to knock and announce only if they proceed to break open a door or window after having

---

ity over the premises. At a suppression hearing, the burden is on the government to make these showings. *See Rodriguez*, 110 S.Ct. at 2797. However, once a suppression motion is denied and an appeal taken, the district court will be affirmed so long as any reasonable view of the record supports its denial of the motion to suppress. *See, e.g., United States v. Williams*, 951 F.2d 1287, 1290 (D.C.Cir.1991); *United States v. Morgan*, 936 F.2d 1561, 1565 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992); *United States v. Ramos*, 933 F.2d 968, 972 (11th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1269, 117 L.Ed.2d 496 (1992); *United States v. Register*, 931 F.2d 308, 312 (5th Cir.1991); *United States v. Young*, 877 F.2d 1099, 1100–01 (1st Cir.1989). It is in this respect that Patrick must show that Smith did not have common authority and that the police did not have a reasonable belief that Smith could consent.

**9.** 18 U.S.C. § 3109 provides:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

been refused admittance. *See* 18 U.S.C. § 3109. Furthermore, even when the police have a duty to announce their purpose, we have excused such an announcement when it would be futile; *see, e.g., United States v. James,* 764 F.2d 885, 888 (D.C.Cir. 1985); when the police are "[f]aced with the probable imminent destruction of evidence," *id.;* and when the police are acting to protect themselves. *United States v. Harris,* 435 F.2d 74, 83 (D.C.Cir.1970), *cert. denied,* 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 152 (1971).

Under the circumstances here, we have little difficulty concluding that the police acted properly in entering the apartment. The search was conducted not pursuant to a warrant but rather with Smith's consent. Moreover, the record reveals that the police did not break open any of the apartment's doors or windows to gain admittance. When viewed in the light most favorable to the government, the evidence suggests instead that Smith opened the apartment door and let the police in. Finally, the police had been informed that Patrick kept both narcotics and weapons in the apartment. Under such dangerous circumstances, the police must necessarily act in a speedy fashion both to protect themselves and to prevent the destruction of evidence; we will not require them "to meet with delicate exactitude the requirements of § 3109." *Harris,* 435 F.2d at 83.

We also reject Patrick's argument that the police were required to knock and announce before they entered the bedroom. Not only is this argument based on a questionable view of the law, *see, e.g., United States v. Remigio,* 767 F.2d 730, 732 n. 2 (10th Cir.) ("Once law enforcement officials enter a house, they need not always comply with the knock and announce statute before entering every other closed door with-

in the residence."), *cert. denied,* 474 U.S. 1009, 106 S.Ct. 535, 88 L.Ed.2d 465 (1985); *United States v. Crawford,* 657 F.2d 1041, 1044–45 (9th Cir.1981) (once police announced at front door, they were not required to do so again before entering bedroom), it is also contradicted by the district court's finding that "the bedroom door was open." [10] *Memorandum Order* at 3.

### III.

■ We next address Patrick's contention that the district court erred when it admitted over his hearsay objection the television sales receipt found in the bedroom. Hearsay is an oral or written statement "other than one made by the declarant while testifying at the trial ... offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Using this definition, we examine the receipt to determine if it contained any hearsay statements and, if so, whether they were admissible under one of the hearsay exceptions of rule 803.[11]

First we consider Patrick's name and the use of it to show that an item belonging to Patrick was found in the same bedroom where the cocaine and weapon were found. We have no difficulty in concluding that, when used for this purpose, the receipt did not constitute hearsay because it was not offered to prove the truth of any statement. *Cf. United States v. Mazyak,* 650 F.2d 788, 792 (5th Cir. Unit B July 1981) (letter found on board vessel smuggling narcotics addressed to defendants properly admitted not to prove truth of matters asserted in letter but to link defendants to vessel and each other), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1281, 71 L.Ed.2d 464 (1982); *United States v. Arrington,* 618 F.2d 1119, 1126 (5th Cir.1980) (utility bills

---

10. Patrick argues that because the suppression hearing testimony that the door "was wide open" was contradicted by trial testimony that "the door was almost closed" and that "the door was open, ajar slightly," the district court's finding was clearly erroneous. The evidence before the district court at the suppression hearing stage, however, was not contradicted. Conflicting testimony that may have occurred after the suppression ruling cannot *nunc pro tunc* render the earlier finding clearly erroneous, especially

when Patrick did not renew his motion to suppress at trial once the differing testimony was elicited.

11. We consider only the exceptions contained in rule 803 because the government made no showing that the declarant (presumably the sales clerk who filled out the receipt) was unavailable to testify.

found during search of house admissible to prove defendant resided there), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 876, 66 L.Ed.2d 812 (1981).

The prosecution, however, did not limit its use of the receipt to Patrick's name but also relied on the address on the receipt to establish Patrick's guilt. During closing argument, the prosecutor stated:

> Take, for example, an argument that might be made that that's not his apartment, that he doesn't live there, and that's not his bedroom, that he doesn't stay in that bedroom.

> Well, ladies and gentlemen, let's look at a couple of things that were taken out of that bedroom. Look at government's exhibit no. 14, the television receipt. You all had a chance to look at this closely before when it was admitted into evidence. G.A. Patrick, 818 Chesapeake Street, Southeast, Washington, D.C. 20020.

Tr.T. at 513. The receipt so used constituted a statement, namely Patrick lived at 818 Chesapeake Street, Southeast, and that statement indisputably was hearsay. Unlike the use of the name on the receipt to show that an item belonging to Patrick was found in the bedroom, the prosecutor published Patrick's address as it appeared on the receipt to prove the truth of the matter asserted, that is, the address of Patrick's residence.[12] *Cf. United States v. Lieberman,* 637 F.2d 95, 100–01 (2d Cir.1980) (hotel registration card bearing individual's name and address not admissible to prove individual had stayed at hotel).[13]

Having concluded that the address constituted hearsay, we must determine whether its use was proper under one of the hearsay exceptions contained in rule 803. The strongest case for allowing the address to be used as it was is that it was part of a record of regularly conducted activity under rule 803(6) (business records exception).[14] Fed.R.Evid. 803(6). We first note that the address on the receipt reflects not only the assertion of the Circuit City employee who made out the receipt but also the assertion of the customer who provided the address. The address was thus hearsay within hearsay, *see* Fed.R.Evid. 805, and was not admissible to prove Patrick's residence unless both the customer's statement and the employee's recording of it were admissible. *See United States v. Baker,* 693 F.2d 183, 188 (D.C.Cir.1982) ("Double hearsay exists when a business record is prepared by one employee from information supplied by another"; "[an] outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have."); *see also Wilson v. Zapata Off-Shore Co.,* 939 F.2d 260, 271 (5th Cir.1991) ("Rule 803(6) does not, by itself, permit the admission of [a] business record" when the "source of ... information is an outsider."). Neither was admissible here.

---

**12.** We, unlike the dissent, do not find the holding in *United States v. Watkins,* 519 F.2d 294 (D.C.Cir.1975), distinguishable. In *Watkins,* the defendant was charged with possession with intent to distribute based on drugs found in the apartment where she was arrested. We held that a rent receipt in Watkins' name for that apartment was hearsay when offered "to show who was paying for the apartment and who was living there." 519 F.2d at 296–97. Here, the prosecutor similarly used the address on the sales receipt to prove Patrick lived at the apartment.

**13.** In *Lieberman,* the court upheld the admissibility of the hotel registration card to show that someone using the name on the receipt had registered at the hotel. 637 F.2d at 101. Here, however, at this point in its closing argument, the government did not seek to use the receipt to show that someone claiming to be Patrick and to reside at 818 Chesapeake Street had purchased a television. Rather, the government used the receipt to prove that Patrick resided at that address. *See infra* p. 1002.

**14.** At trial the government argued that the receipt "would fit into the exception which admits hearsay which is generally reliable." Tr.T. at 270. We take this to be a reference to the residual exception in rule 803(24). Rule 803(24), however, requires, among other things, that "the statement [be] more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." *Id.* The government made no such showing.

The government did not call a Circuit City employee who could show that "it was the regular practice" of Circuit City to make the receipt. Fed.R.Evid. 803(6); *see also United States v. Kim*, 595 F.2d 755, 761 (D.C.Cir.1979) (denying admission of bank telex under rule 803(6) because telex was not shown to have been "made for a regular business purpose"). But even if an employee had been called and had testified that it was his regular practice to record the information, his testimony would have answered only part of the question we face; we still must determine the truth of the information provided because rule 803(6) also requires that the information be "transmitted by, a person with knowledge." Fed.R.Evid. 803(6); *see also* J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 803(6)[04]. As the Advisory Committee Notes on rule 803(6) state:

> Sources of information presented no substantial problem with ordinary business records. *All participants, including the observer or participant furnishing the information to be recorded, were acting routinely, under a duty of accuracy, with employer reliance on the result*, or in short "in the regular course of business." If, however, the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail. An illustration is the police report incorporating information obtained from a bystander: the officer qualifies as acting in the regular course but the informant does not. The leading case, *Johnson v. Lutz*, 253 N.Y. 124, 170 N.E. 517 (1930), held that a report thus prepared was inadmissible. Most of the authorities have agreed with the decisions. (Citations omitted) ... The rule follows this lead in requiring an informant with knowledge acting in the course of the regularly conducted activity.

Notes of Advisory Committee On 1972 Proposed Rules (emphasis added).

 We do not read the rule so literally as to require that the person transmitting the information must himself be under a business duty to provide accurate information. Rather, we find that the approach taken by both the Second Circuit and the Seventh Circuit in cases involving the admission of hotel registration records represents a sound accommodation of a defendant's right to ensure that his conviction is not based on unreliable information and society's right to ascertain the truth. *See United States v. Zapata*, 871 F.2d 616, 625 (7th Cir.1989); *United States v. Lieberman*, 637 F.2d 95, 100–01 (2d Cir.1980).

In *Zapata*, the Seventh Circuit affirmed the district court's admission of hotel guest registration records under rule 803(6) to prove that the defendant had stayed in the hotel. 871 F.2d at 625. Zapata had argued that because the registration forms were filled out by the guests rather than the hotel employees, they were unreliable. *Id.* The Seventh Circuit rejected this argument noting that "the key to satisfying Rule 803(6) in this context is whether the employee was 'able in some way to verify the information provided—for example, by examining a credit card, driver's license, or other form of identification.'" *Id.* (quoting *Lieberman*, 637 F.2d at 101). Because the hotel's executive assistant manager testified that it was a "standard practice" to verify the information provided by a registering guest, the court in *Zapata* held that the records were admissible. In *Lieberman*, the Second Circuit adopted a similar approach. *See* 637 F.2d at 101 ("[I]f ... verification is obtained by the employee, we see no reason why the guest card that has been filled in by the guest himself would not qualify as a business record and thus be admissible for the truth of its statements.").

We think the reasoning of *Zapata* and *Lieberman* applies to our facts. Accordingly, in deciding whether the receipt was properly admitted, we do not require that Patrick be under a business duty to provide the information. Rather, it is sufficient if it is shown that Circuit City's standard practice was to verify the information provided by a customer. Because we do not know if this was the case, we conclude that

it was error to allow the receipt to be used as it was in closing argument.

■■■ Finally, we consider the serial and model numbers on the receipt. In closing argument, the government used the television serial and model numbers on the receipt to link Patrick to the television found in the bedroom, arguing "That TV receipt bears a serial number, a model number. I ask you, if you so desire, ask for government's exhibit 12, the television set ... You'll see it appears on government's exhibit No. 1, [indicating it was found] in the bedroom." Tr.T. at 513. Again the receipt so used constituted a statement, namely Patrick purchased the television found in the bedroom, and was hearsay because it was offered to prove the truth of that statement. *See United States v. Watkins*, 519 F.2d 294, 296–97 (D.C.Cir.1975) (rent receipt inadmissible hearsay to prove defendant paid rent); *see also United States v. Jefferson*, 925 F.2d 1242, 1251–53 (10th Cir.) (bill for pager inadmissible hearsay when offered to prove defendant had bought pager), *cert. denied*, —— U.S. ——, 112 S.Ct. 238, 116 L.Ed.2d 194 (1991); *United States v. Markopoulos*, 848 F.2d 1036, 1038–39 (10th Cir. 1988) (rental car contract inadmissible hearsay when offered to prove defendant had rented car containing contraband); *Federal Deposit Ins. Corp. v. Roldan Fonseca*, 795 F.2d 1102, 1110 (1st Cir.1986) (receipt for money orders inadmissible hearsay to prove mortgage payments).

We need not repeat the reasons that this use of the receipt was improper. Without more reliable evidence that it was Patrick who bought the television, such as evidence that Circuit City's standard practice was to verify the names provided by customers, we conclude that the district court erred in allowing the receipt to be used for this purpose.

■■■ Our finding of error does not end our inquiry because we must decide whether the error was harmless. *See* Fed. R.Crim.P. 52(a). In deciding, we examine the "entire record," *id.*, Notes Of Advisory Committee On Rules 1944 Adoption, and determine "whether the error itself had a substantial influence" on the verdict. *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); *see also United States v. Brown*, 921 F.2d 1304, 1308 (D.C.Cir.1990). Our function, however, is not to determine "guilt or innocence." *Kotteakos*, 328 U.S. at 763, 66 S.Ct. at 1247. Nor is it to determine whether there is enough evidence "to support the result." *Id.* at 765, 66 S.Ct. at 1248. Rather, we must determine "with fair assurance ... that the judgment was not substantially swayed by the error." *Id.*

The government argues that the error was harmless because of Patrick's presence in the bedroom at the time of the search, the many pairs of tennis shoes in the bedroom as well as the "Gary" bracelet found inside one of them, "the fact that [Patrick] was sufficiently knowledgeable about where objects in the bedroom were placed to be making movements under the bed toward a .38–caliber revolver," and, finally, that "[t]he jury [had] also learned that Kevin Smith was the apartment lessee and had consented to a search to remove evidence, including guns, ammunition, narcotics and narcotics proceeds, from Smith's apartment." Brief of United States at 26.

We find the government's recitation of the evidence supporting its claim of harmless error less than persuasive. We agree that Patrick's presence as well as the location of the "Gary" bracelet in the bedroom are probative of Patrick's dominion and control of the bedroom. But our review of the record reveals that the evidence that Patrick was reaching for a gun is equivocal at best. Although one of the police officers testified that, when he entered the bedroom, Patrick was kneeling alongside the bed with his left arm underneath it, *see* Tr.T. at 348 (testimony of Sergeant Smith), the other officer testified that when Patrick was "against the bed, his right arm was underneath his body, I couldn't see his hand at all, and his left arm was down near his side, I could not see it at that time at all." *Id.* at 214 (testimony of Detective Curley). While the jury could have drawn from Sergeant Smith's testimony the infer-

ence that Patrick was reaching for the gun, it could have also concluded based on Detective Curley's testimony that Patrick was cowering from the police.

We also fail to see how the evidence that Smith was the apartment lessee and had consented to the search is probative of Patrick's possession of the contraband found in the bedroom. We know from our review of the suppression hearing transcript that the most probative evidence of all, evidence which would have removed any doubt as to Patrick's dominion and control over the bedroom, was Smith's testimony. But the government did not call Smith at trial. Therefore, we cannot rely on his testimony in conducting our harmless error analysis.

While we cannot consider Smith's suppression hearing testimony, we must nonetheless consider the entire record. We also must consider that, apart from the erroneous use of the receipt to prove both Patrick's address and his purchase of the television, the receipt, when properly redacted, was admissible for the non-hearsay purpose of showing that a document bearing Patrick's name was recovered from the bedroom. *See Arrington*, 618 F.2d at 1126; *cf. United States v. McCollum*, 732 F.2d 1419, 1424 (9th Cir.) (erroneous admission of conviction under rule 609 harmless when evidence could have been admitted under rule 404(b)), *cert. denied*, 469 U.S. 920, 105 S.Ct. 301, 83 L.Ed.2d 236 (1984); *United States v. Mehrmanesh*, 689 F.2d 822, 831 n. 10 (9th Cir.1982) (same). Nevertheless, we are not satisfied that the error that occurred here did not have a "substantial influence" on the jury, especially in view of the otherwise thin trial evidence against Patrick. *Kotteakos*, 328 U.S. at 765, 66 S.Ct. at 1248. Moreover, the fact that the prosecutor made more than one reference to the receipt in his closing argument reinforces our conclusion that the error was not harmless.

In summary, we affirm the district court's denial of Patrick's motion to suppress. Because we find that the use of the sales receipt at trial was erroneous and that the error was not harmless, we reverse the judgment of conviction and order a new trial.[15]

*It is so ordered.*

SENTELLE, Circuit Judge, concurring in part and dissenting from the judgment:

While I completely concur in the opinion of the Court as to the motion to suppress, I respectfully dissent from the Court's conclusion that the television receipt was improperly admitted into evidence, and therefore, I dissent from the judgment reversing Patrick's conviction. In my view, the receipt was not offered as hearsay, and therefore did not need to come within any exception to the hearsay rule.

The Federal Rules of Evidence codify a classic definition of hearsay. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c). A receipt is a statement that the person named on the receipt has paid the obligation receipted by the document in question. Therefore, in *United States v. Watkins*, 519 F.2d 294 (D.C.Cir.1975), we properly held that rent receipts were in fact hearsay where they were offered for the truth of that assertion, that is, that the defendant "did in fact pay the rent" on the apartment at issue in that case. *Id.* at 296.

In the case at bar, the receipt is a statement that Patrick paid for the television set found in the bedroom. The government did not offer the receipt for the purpose of proving the truth of that statement. It is in fact immaterial to the government's cause whether he paid for the set or not. The receipt is offered not for the truth of the statement which it constitutes, but

---

**15.** To make clear to the jury that it could consider the receipt only for the limited purpose of showing that a document bearing Patrick's name had been found in the bedroom, the district court should have redacted the references to Patrick's address and the serial and model numbers or, at a minimum, given a limiting instruction. Although counsel and the court discussed these alternatives before the receipt was admitted, the court did neither. Tr.T. at 264–71.

rather for the circumstantial value which it bears connecting Patrick with the apartment and the bedroom wherein he, the receipt and the television described were all found.

In this use, therefore, the receipt is not like the rent receipt offered in *Watkins* for the truth of its stated contents, but rather like the letter considered by the Fifth Circuit in *United States v. Mazyak*, 650 F.2d 788 (5th Cir.1981). In that case involving charges of marijuana smuggling, the circuit held that the district court had properly admitted a letter addressed to all four defendants referencing their "precious cargo." The circuit ruled that the letter was not hearsay because it was not introduced to prove the truth of the matter asserted, but rather "that the appellants were associated with each other and the boat." *Id.* at 792. Similarly the receipt in the present case was offered not to prove the truth of the matter asserted (the payment of the bill), but rather the association of the defendant, the television set, and the apartment.

Likewise, in *United States v. Arrington*, 618 F.2d 1119 (5th Cir.1980), the district court admitted utility bills directed to the defendant and found in the search of a home as evidence of his residence in that home. The circuit court dismissed the hearsay challenge to that evidence, stating that "[t]he bills were not proffered to prove the truth of their contents and accordingly were admissible." *Id.* at 1126.

Likewise, in the present case, it is immaterial to the value of the evidence whether Patrick actually paid for the television as stated in the receipt, fabricated the receipt in order to cheat someone out of the television, or grabbed the television set and ran while the Circuit City employee was making up the receipt. The probative force of the evidence remains the same. It connects Patrick with the set and with the apartment in which it and the receipt were found.

If there is any problem with the admission of the evidence, it is not one of hearsay, but of document authentication. And in fact, I submit there is no problem there either, for two reasons. First, document authentication under the Rules of Evidence is a liberal matter. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(a). In *United States v. Sutton*, 426 F.2d 1202 (D.C.Cir.1969), we noted that "the sufficiency of a showing of authenticity of a document sought to be introduced into evidence is a matter residing in the sound discretion of the trial judge." *Id.* at 1207. More pertinently, we further noted that the contents of a document "conjoined with the circumstances surrounding [its] discovery" can provide an adequate basis for a ruling admitting it into evidence. *Id.* In that case, this notion was extended even to the authorship of a document. In the present case we need not go so far. Rather, it is at least sufficient to note that the document by its contents appears to be a receipt describing the television set bearing a particular serial number, and connecting that set with a particular named person. The evidence supporting its introduction tended to establish that police found the document in the same room as the television set at the address named on the receipt, and in the presence of the person whose name the receipt bore. If the document needed identification, I cannot imagine that it needed any more.

At bottom, however, I do not really suppose that the document required authentication at all. Again, even if the defendant forged it, the finding of that document bearing the contents it bore under the circumstances under which it was found was relevant to the point it was offered to prove. That being the case, I see no error, let alone one of reversible magnitude. Therefore, I respectfully dissent.